## PALMIRA N. ALLGOOD *v.* JOSEPH L. SOMERVILLE, SR.

[No. 1361, September Term, 1978.]

*Decided July 13, 1979.*

The cause was argued before LOWE and COUCH, JJ., and JAMES S. GETTY, Associate Judge of the Fourth Judicial Circuit, specially assigned.

*Benjamin R. Wolman,* with whom were *Eugene M. Newman* and *Wolman & Gushee* on the brief, for appellant.

*Robert A. Zarnoch, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

In this appeal from a demurrer sustained without leave to amend by the Circuit Court for St. Mary's County, appellant

clings to a thin conclusory reed which is far too insubstantial to keep her afloat.

Appellant, Palmira N. Allgood, was a deputy sheriff hired by appellee, Sheriff Somerville, and subsequently terminated by him. No reason for termination was given other than that her services were no longer needed. She petitioned to enjoin that termination. According to the chancellor's opinion, appellee's demurrer (which was not included in the record extract but clearly should have been, Md. Rule 1028) asserted:

> "that this court lacks jurisdiction over the subject matter of this case; that the plaintiff has failed to state a claim upon which relief can be granted; and that the plaintiff has failed to allege sufficient injury warranting injunctive relief."

He then pointed out that there was no tenure or merit system protecting appellant.

> "The defendant is a constitutional officer with the common law power to appoint and terminate his deputies. Article 10, Section 44, Maryland Constitution; *Beasley v. Ridout,* 94 Md. 641 (1902); Anderson on Sheriffs, Section 85. The General Assembly has over the years restricted the Sheriff's rights by providing deputy sheriffs of several counties with tenure after expiration of probation and certain procedural rights with respect to terminations. See Courts and Judicial Proceedings Article, Section 2-309 (h), (Carroll County), 2-309 (l) (Frederick County); and Section 2-309 (w) (Washington County). However, it appears that no similar provision has been enacted pertaining to the Sheriff of St. Mary's County."

The opinion then addressed what the judge discerned to be the underlying cause of action that appellant was trying to set forth in her vague, conclusory and circuitous petition:

> "The 'Law Enforcement Officers' Bill of Rights' was enacted by the Legislature in 1974 (Chapter 722, Acts of 1974), its application expanded by

amendment in 1975 (Chapter 809, Acts of 1975), and substantially rewritten in 1977, (Chapter 366, Acts of 1977). The purpose of the Law Enforcement Officers' Bill of Rights was to guarantee certain procedural safeguards to law enforcement officers during investigations and hearings which could result in disciplinary action, demotion or dismissal. *Abbott v. Administrative Hearing Board,* 33 Md. App. 681, 366 A. 2d 756 (1976). Section 728 (b) sets forth the procedures to be followed and conditions that must be met whenever a law enforcement officer is under investigation or is subject to interrogation by a law enforcement agency, for any reason which could lead to disciplinary action, demotion or dismissal. Similarly, Section 730 (a) confers a right to a hearing if an investigation or interrogation of a law enforcement officer results in the recommendation of some action such as dismissal. Section 731 requires that the hearing board make a finding of guilty or not guilty on each issue before the board.

In the instant case, there can be no doubt that the plaintiff is a law enforcement officer within the meaning of Sections 727 (b) (5) and 727 (b-1). But the plaintiff does not allege or contend that she was either investigated, interrogated, or charged. Nor were any complaints or accusations made against her. This admission appears fatal, for the language of the Law Enforcement Officers' Bill of Rights clearly indicates that the law enforcement agency must act in one of the above ways before the procedural safeguards and protections can come into play. Simply put, the court is of the opinion that the language of the statutes here relied upon by the plaintiff do not reach terminations of non-tenured law enforcement officers without cause. A hearing board could not properly make a finding of guilty or not guilty when there have been no accusations, complaints or charges giving rise to the termination."

Presumably the appellant argued there, as she did here, that the statute should be construed as a tenure provision and at the very least sufficiently so as to require a law enforcement officer's employer to justify a dismissal in court when called upon to do so. The chancellor declined to do that — and so do we.

"The plaintiff urges that if the provisions of the Law Enforcement Officers' Bill of Rights is so construed, no law enforcement officer in the future will be charged, The court however refuses to speculate or substitute its judgment for what the legislature has duly enacted. Nor will it assume or presume purposes that are not indicated or expressed by the statute itself."

The chancellor concluded by finding that the Law Enforcement Officers' Bill of Rights was inapplicable in the instant case and that appellant had failed to state a claim upon which relief could be granted.

On appeal, recognizing our reluctance to write into a statute that which the Legislature omitted, appellant alternatively argues that under § 734 of the Act a law enforcement officer

"who is denied any right afforded by this subtitle may apply ... for any [sic] order directing the law-enforcement agency to show cause why the right should not be afforded."

She then points to § 733 of the subtitle which elliptically reads:

"A law-enforcement officer may not be discharged ... or otherwise discriminated against in regard to his employment ... by reason of his exercise of or demand for the rights granted in this subtitle, or by reason of the lawful exercise of his constitutional rights."

Appellant indicates in her brief that her petition had alleged:

"Your plaintiff submits that the arbitrary, capricious, unlawful, and improper conduct of the Defendant is, *inter alia,* a discharge and discriminatory action in retaliation for exercising rights granted by the laws of this County, the State of Maryland, and the Constitution of the United States, including without limitation, Article 27, Section 733, Annotated Code of Maryland, and the XIV Amendment of the United States Constitution, and Title 18, United States Code, Section 1983, *et seq. . . .*"

That bald conclusory statement is obviously demurrable absent some factual recitation to support a cause of action thereunder. The record nowhere indicates that appellant raised this constitutional infringement issue before the chancellor and she frankly admitted she did not. There is no allusion of conduct or evidence in support of the allegation in appellant's "Affidavit in Support of Petition for Injunctive Relief," any of the memoranda filed by appellee or even a suggestion at argument that such evidence does in fact exist. The chancellor responded to appellant's sole thrust below, and we are in accord with that response.

Nor did appellant ask for leave to amend and the chancellor, therefore, cannot be faulted for denying that which was not requested. *See Columbia R. E. Title Ins. Co. v. Caruso,* 39 Md. App. 282, 290 (1978). Appellant's silence as to any constitutional infringement to support her claim for an injunction and demand to show cause, together with her singular reliance upon an entirely different theory of the case, should not be permitted to be changed upon appeal after an unfavorable judgment. *Kasten Constr. Co. v. Jolles,* 262 Md. 527, 533-534 (1971); *Alois v. Waldman,* 219 Md. 369 (1959); *Brehm v. P. B. & W. R. Co.,* 114 Md. 302, 305 (1911).

*Judgment affirmed.*
*Costs to be paid by appellant.*