ROBERT J. DI GRAZIA *v.* COUNTY EXECUTIVE
FOR MONTGOMERY COUNTY

[No. 41, September Term, 1979.]

*Decided October 15, 1979.*

The cause was argued before GILBERT, C. J., and LOWE and
WEANT, JJ.

*Peter I. J. Davis,* with whom were *Charles N. Shaffer* and
*Shaffer & Davis* on the brief, for appellant.

*Richard E. Frederick, Deputy County Attorney for Montgomery County,* with whom were *Paul A. McGuckian, County Attorney,* and *Martin J. Hutt, Assistant County Attorney,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

This appeal generally involves the applicability of the provisions of Md. Ann. Code art. 27, § 727-734D, the "Law Enforcement Officers' Bill of Rights (LEOBR) to the termination by a newly elected County Executive of the Director of Police [1] for Montgomery County. Specifically, it tests the right of the Executive to remove and replace non-merit employees with those of his own choosing.

The appellant, Robert J. Di Grazia, was appointed, in 1976, Director of Police by former County Executive, James P. Gleason. The County Council confirmed the appointment on October 5, 1976, and Di Grazia assumed office ten days later. Throughout the remainder of Mr. Gleason's term of office, the appellant continued to so serve. Mr. Gleason opted not to seek re-election, and the appellee emerged from the elective process as the successor County Executive, taking office on December 4, 1978.

Three days thereafter, the newly installed County Executive requested Di Grazia's resignation. When the latter refused to resign, the appellee relieved appellant of all duties and elevated Major Donald E. Brooks to the position of Acting Director of Police. In subsequent interviews, the County Executive explained his action. He said that certain statements made by the appellant hindered the effective operation of the Police Department.[2]

Di Grazia, however, refused to sit by idly, and, on December 13, 1978, he filed a petition under Md. Ann. Code

---

1. The Director of Police in Montgomery County is a non-merit position as a department head. Montgomery Co. Code, Section 2-43; Section 33-3(c). It is equivalent to the Chief of Police in other jurisdictions.

2. The statements which were attributed to De Grazia criticized the performance of the rank-and-file officers and described fifty percent of them as being unqualified.

art. 27, § 734, alleging a denial of various rights accorded him under Art. 27, § 727 *et seq.*[3] A show cause order issued the next day, required a response by the County Executive on or before January 29, 1979.

Before appellee had filed any responsive pleading, Di Grazia sought to take the appellee's deposition. The County Executive requested a protective order, which, following a hearing thereon, was granted by Judge Phillip Fairbanks. The judge's order, predicated on his interpretation of Md. Rule 401, prevented the taking of the deposition prior to January 29, 1979.

The appellant moved for summary judgment, filing along with his motion six exhibits.[4] The County Executive then filed a cross-motion for summary judgment adding two additional exhibits [5] to those of appellant. Each side stipulated to the admissibility and authenticity of the other's exhibits.

---

3. Md. Ann. Code art. 27, § 728(b) provides in pertinent part:

"(b) *Procedure to be followed at interrogation or investigation; record; representation by counsel; statute or regulation abridging right to sue; insertion of adverse material into officer's file; chief under investigation; polygraph examination.* — Whenever a law-enforcement officer is under investigation or subjected to interrogation by a law-enforcement agency, for any reason which could lead to disciplinary action, demotion or dismissal, the investigation or interrogation shall be conducted under the following conditions...."

The subsection then goes on to detail a plethora of procedural safeguards governing various aspects of the investigation or interrogation. Sections 730 and 731 provide additional procedures following the investigation or interrogation. Section 733 prohibits the dismissal of a law enforcement officer for exercise of his rights under the LEOBR or under the Constitution.

4. The appellant filed as exhibits:

    a)  a transcript of a press conference held by the County Executive at which he discussed his termination of Di Grazia;

    b)  a transcript of a television interview of the County Executive including a discussion of the same subject;

    c)  a transcript of a County Council hearing dated June 29, 1976, concerning a revision of the County Charter to make the Director of Police a non-merit department head position;

    d)  a copy of the testimony of former County Executive Gleason on the same subject;

    e)  an unidentified memorandum on the same subject;

    f)  a legal memorandum, dated April 7, 1976, from the County Attorney on the same subject.

5. To the exhibits submitted by the appellant, the appellee added:

On February 27, Judge Fairbanks, in a written opinion, granted the appellee's motion. The appellant raises two contentions in his appeal to this Court. He asserts:

I. The trial judge erred in granting the appellee's motion for summary judgment.

II. The trial judge erred in issuing the protective order.

## I.

The standards for ruling upon a motion for summary judgment have been the subject of numerous opinions of both this Court and the Court of Appeals. Md. Rule 610 a 1 provides that "a party . . . may at any time make a motion for summary judgment . . . on the ground that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law." The trial judge is to render judgment only if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Md. Rule 610 d 1.

Summary judgment is not a substitute for a trial but only a procedure to determine whether a trial is necessary. *Kirsner v. Fleischman,* 261 Md. 164, 169, 274 A.2d 339, 342 (1971); *Mazur v. Scavone,* 37 Md. App. 695, 698-99, 378 A.2d 1355, 1357 (1977). When ruling on such a motion, the trial judge does not decide disputed facts but, rather, decides whether any real dispute exists as to *material* facts. *Washington Homes Inc. v. Interstate Land Development Co., Inc.,* 281 Md. 712, 716, 382 A.2d 555, 557 (1978); *Lipscomb v. Hess,* 255 Md. 109, 118, 257 A.2d 178, 183 (1969); *Vanhook v. Merchants Mutual Insurance Co.,* 22 Md. App. 22, 25, 321 A.2d 540, 542 (1974). All duly shown facts which would be admissible at trial, and all reasonable inferences deducible therefrom, must

---

a) a Montgomery County "Employee Certificate Form" which described appellant's position as "Non-Merit, Career" along with other personal information;

b) a certified copy of the County Council Resolution confirming Di Grazia's appointment.

be considered in a light most favorable to the party opposing the motion and against the party making the motion. *Washington Homes v. Interstate Land Development Co., Inc.,* 281 Md. at 718, 382 A.2d at 557-58; *Rooney v. Statewide Plumbing,* 265 Md. 559, 563-64, 290 A.2d 496, 499 (1972); *Mazur v. Scavone,* 37 Md. App. at 704, 378 A.2d at 1359. The function of the trial judge in deciding motions for summary judgment is much the same as that he performs at the close of all the evidence in a jury trial when passing upon motions for directed verdict or requests for peremptory instructions. *Porter v. General Boiler Casing Co.,* 284 Md. 402, 413, 396 A.2d 1090, 1096 (1979); *Washington Homes v. Interstate Land Development Co., Inc.,* 281 Md. at 711, 382 A.2d at 557.

Judge Fairbanks, as we see it, assigned two reasons for his conclusion:

1) The termination of Di Grazia's employment was a failure of re-appointment, not a "firing" and did not violate Md. Ann. Code art. 27, § 733; and

2) The appellant failed to demonstrate that he met the conditions required to impose the procedural safeguards of Art. 27, §§ 728, 730, and 731 upon the County Executive.

We shall discuss the second aspect of the ruling prior to consideration of the first of Judge Fairbanks' reasons.

The LEOBR was enacted primarily to assure that certain procedural guarantees would be offered to police officers during any investigation and subsequent hearing which could lead to disciplinary action, demotion, or dismissal. *Abbott v. Administrative Hearing Board,* 33 Md. App. 681, 682, 366 A.2d 756, 757 (1976), *cert. denied,* 280 Md. 727 (1977). Md. Ann. Code art. 27, § 728(b) sets out four conditions which must exist in order to invoke the procedural safeguards of sections 728, 730, and 731.

1) The party claiming the benefits must be a law enforcement officer.

2) He must be under investigation or subject to interrogation.

3) The investigation or interrogation must be conducted by a law enforcement agency.

4) The investigation must have been for a reason leading to disciplinary action, demotion, or dismissal.

The circuit court concluded that the appellant failed to demonstrate the presence of the last three conditions, and, thus, the protection of Article 27, §§ 728, 730, and 731 could not be invoked. While we agree that Di Grazia was not entitled to the benefits of sections 728, 730, and 731, we reach that result by traveling a different road.

In *Allgood v. Somerville,* 43 Md. App. 187, 403 A.2d 837 (1979), we were faced with a strikingly similar situation. There, the plaintiff was a probationary employee of the St. Mary's County Sheriff's Department who was dismissed without cause. She petitioned the court to enjoin the termination, claiming the benefits of the LEOBR. On demurrer by the sheriff, the circuit judge dismissed the petition stating:

" 'But the plaintiff does not allege or contend that she was either investigated, interrogated, or charged. Nor were any complaints or accusations made against her. This admission appears fatal, for the language of the ... [LEOBR] clearly indicates that the law enforcement agency must act in one of the above ways before the procedural safeguards and protections can come into play. Simply put, the court is of the opinion that the language of the statutes here relied upon by the plaintiff do not reach terminations of non-tenured officers without cause.' " 43 Md. App. 187, 403 A.2d at 839.

In affirming the chancellor, we commented that:

"Presumably, the appellant argued there, as she did here, that the statute should be construed as a tenure provision and at the very least sufficiently so as to require a law enforcement officer's employer to justify a dismissal in court when called upon to do

so. The chancellor declined to do that — and so do we." *Id.*

The circuit judge found that the appellant failed to demonstrate that the appellee had undertaken an investigation. Our reading of the record supports that conclusion. The evidence before the court of the statements of the County Executive show only that he said that he had heard reports of the statements made by Di Grazia. Appellant argues that a reading of the transcripts of the interviews of the County Executive would warrant an inference that an investigation did take place. We think appellant's position is nothing more than a murky conclusion based on a hazy inference drawn from a fuzzy suspicion. Whatever it may be, it certainly does not amount to a dispute of a material fact sufficient to defeat a motion for summary judgment. *Hill v. Lewis,* 21 Md. App. 121, 134, 318 A.2d 850, 858, *cert. denied,* 272 Md. 742 (1974).

We refuse to construe Md. Ann. Code art. 27, §§ 728, 730, and 731, under the circumstances of this case, as applying to dismissal of a non-tenured employee. We repeat what we said in *Allgood v. Somerville, supra,* that the LEOBR is not a substitute for tenure. Furthermore, to require that the County Executive submit what is essentially a political determination to judicial review would be an encroachment by the judicial branch upon the executive branch and an invasion of the prerogative of the Executive's office. In the absence of an express provision to the contrary, we shall not presume that the legislature intended that the courts construe the LEOBR in such a manner as to negate decisions of an Executive as to whom shall fill purely political appointments.

We think that this disposes of the contention that Di Grazia's "firing" violated Md. Ann. Code art. 27, § 733. Where an individual obtains a position *via* political appointment, he does so at the risk that his continued employment may be jeopardized by a change of administrations. Put another way, he who lives by the sword shall die by the sword.

We do not reach the other questions posed by appellant as to whether the County Executive is a law enforcement agency, and whether the appellant was punitively dismissed.

## II.

The appellant fires one final shot. He argues that the trial judge erred in issuing a protective order, thereby foreclosing any opportunity of appellant's taking the deposition of the appellee prior to January 29, 1979.

Md. Rule 401 a provides:

> "At any time after jurisdiction has been obtained over any defendant or over property which is the subject of the action, but no earlier than the day on which defendant's initial pleading is required pursuant to section a of Rule 307 (Time for Defendant's Initial Pleading), any party to an action may, without leave of court, cause the testimony of any person, whether a party or not, to be taken by deposition for the purpose of discovery or for use as evidence in the action or for both purposes. The questions upon such deposition may be propounded orally or in writing."

The record reflects that in the matter now before us the show cause order issued on December 14, 1978, required a response on or before January 29, 1979. The appellant noted the deposition of the appellee on January 6, 1979, and set it for January 12, 1979. We think such a time frame to be a clear violation of that part of the rule which precludes any deposition until the "day on which the defendant's initial pleading is required...," in this case, January 29, 1979.

Di Grazia seeks by sleight of hand to throw a form of legalistic dust in our eyes, apparently in the hope that we will not see through his translucent argument that the time for the Executive's pleading was on or after the day of service, but in any event, not later than January 29, 1979. Despite the sleight of hand, in spite of the legalistic dust, our vision is

unimpaired. The appellant's argument is too specious to require discussion.

*Judgment affirmed.*
*Costs to be paid by appellant.*