MAYOR AND COMMISSIONERS OF WESTERNPORT
*v.* JOHN E. DUCKWORTH

[No. 984, September Term, 1980.]

*Decided July 7. 1981.*

The cause was submitted on briefs to Lowe, Melvin and
MacDaniel, JJ.

Submitted by *Jack I. Mullen* for appellant.

Submitted by *Gregory H. Getty* for appellee.

MELVIN, J., delivered the opinion of the Court.

This case involves the Law-Enforcement Officers' Bill of Rights (LEOBR), Maryland Code (1957, 1976 Repl. Vol., 1980 Cum. Supp.), Art. 27, §§ 727-734D.

On October 30, 1979, the appellee, John E. Duckworth, a police officer employed by the Mayor and Commissioners of Westernport in Allegany County, was involved in an accidental shooting of the town's Communications Officer. The accident occurred while Duckworth was on duty in the Westernport police station and engaging in "horseplay" with the Communications Officer. The next day the police chief sent Duckworth a letter suspending him without pay, "pending the outcome of the on-going investigation by the Maryland State Police into the October 30, 1979 shooting of Public Communications Officer, Kevin Lee Green." The letter was captioned: "RE: EMERGENCY SUSPENSION — Section 734-A of the Law-Enforcement Officers' Bill of Rights." Section 734-A (2) of the LEOBR provides:

> "Emergency suspension may be imposed by the Chief when it appears that the action is in the best interest of the public and the law-enforcement agency. Any person so suspended shall be entitled to a prompt hearing."

At some point after Duckworth received the October 31st suspension letter he was asked by the town Mayor and the police chief to resign. He refused to do so.

Trooper P. D. Wilson conducted the State Police investigation of the incident. His written reports indicate that the investigation was a routine criminal investigation. He reported the results to his superiors in the State Police Department and there is nothing in the record to indicate that he was acting for or at the request of the town of Westernport or its police chief. According to the trooper's last written report on the matter, submitted to his superiors on November 9, 1979, he contacted the State's Attorney for

Allegany County on November 7, 1979, and was instructed by the State's Attorney "to obtain a criminal summons for the ACCUSED for Assault and Battery." The report concludes: "The summons was obtained on 11-8-79 and served on the ACCUSED at his residence on 11-9-79. The trial in this case has been set in the District Court on 12-7-79. It is requested this case be closed by arrest." The report was "approved" by Trooper Wilson's superiors on November 12, 1979.

After the criminal trial, at which Duckworth was acquitted, his attorney wrote to the police chief on February 15, 1980, requesting on Duckworth's behalf "a Hearing Board Review in accordance with the Law Enforcement Officer's [sic] Bill of Rights (Chapter 722, Article 27, Section 727-735 *Annotated Code of Maryland*)." Receiving no response, the attorney wrote another letter on March 4, 1980, asking for a reply. This produced the following letter, dated March 12, 1980, from the town's attorney:

"The Mayor and Commissioners of Westernport have directed me to reply to your inquiry regarding the status of former police officer John Duckworth. The council has decided that Mr. Duckworth's employment with the town is terminated."

This letter was captioned: "RE: Westernport, Town of vs. John Duckworth-Kevin Green *Shooting Incident File* No. 79-464-W" (emphasis in original), thus making clear that the reason for Duckworth's dismissal was his conduct in connection with the October 30, 1979 shooting incident.

On March 31, 1980, Duckworth, through counsel, filed a petition in the Circuit Court for Allegany County. The petition was filed pursuant to § 734 of the LEOBR which provides:

"Any law-enforcement officer who is denied any right afforded by this subtitle may apply at any time prior to the commencement of the hearing before the hearing board, either individually or through his certified or recognized employee orga-

nization, to the circuit court of the circuit or the Baltimore City Court where he is regularly employed for any order directing the law-enforcement agency to show cause why the right should not be afforded."

The petition alleged that Duckworth had not been afforded 1) "a hearing pursuant to Section 734A (2)" and 2) "notice [that] he was entitled to a hearing on the issues by a Hearing Board prior to his dismissal." Although the petition itself contained no prayer for relief, it was accompanied by a form of order for the court's signature. The order was signed by the court the same day. It directed "that the Police Department and Mayor and Commissioners of Westernport, Maryland, comply with the requirements of the Law Enforcement Officer's |sic| Bill of Rights in regard to the dismissal of Officer John E. Duckworth unless cause to the contrary be shown by the said Mayor and Commissioners of Westernport within 15 days of the service upon them of a copy of this Petition and Order to show Cause." [1]

The defendants filed a joint answer denying that they had in any way "violated procedural safeguards as set forth in" the LEOBR. After a hearing on the merits of the petition, Judge Fred A. Thayer, on June 12, 1980, filed a written Opinion and Order of Court. Judge Thayer concluded that in this case,

"... |T|wo separate and distinct procedural safeguards are involved under the Law Enforcement Officers' Bill of Rights. It seems clear, first, that Officer Duckworth was denied a prompt hearing to which he was entitled on his emergency suspension under Section 734A (2) and, second, that his subsequent dismissal was the product of the State Police Investigation although it made no recommendations to the town police department.

---

1. We note that although the order is titled "Order to show Cause", it is in the form of an order *nisi*, which is not permitted upon an original pleading. *See* Md. Rule 324. However, since no issue was made of this rule violation below we disregard it here.

Unlike *Allgood* [*vs. Somerville*, 43 Md. App. 187 (1979)] and *DiGrazia* [*vs. County Executive for Montgomery County*, 43 Md. App. 580 (1979)], there are specific issues raised in the present case on which Officer Duckworth is entitled to a hearing. Since Officer Duckworth is clearly a law enforcement officer, his suspension was 'pending the outcome of the on-going investigation by the Maryland State Police', and the reasons for his dismissal appear to have resulted from that investigation. Officer Duckworth is likewise entitled to the hearing provided by the terms of Section 730. Mr. Duckworth's status pending the hearing to which he is entitled has not been raised by the pleadings; therefore, that issue is not here considered.

## ORDER OF COURT

For the reasons stated, it is this *12th* day of *June, 1980*, by the Circuit Court for Allegany County, Maryland, ORDERED that the Town of Westernport Police Department hearing board conduct a hearing pursuant to Section 734A (2) of Article 27 of the Annotated Code of Maryland on the issue of emergency suspension of John E. Duckworth; and that it conduct a hearing pursuant to Section 730 of Article 27 on the issue of the termination of his employment. These hearings may be consolidated and shall be held within thirty days from this date.

Costs of this action to be paid by the Town of Westernport."

The Westernport Police Department, to whom Judge Thayer's order was exclusively directed, did not appeal the order.[2] The town of Westernport, to whom the order was *not* directed is the only appellant. No question has been raised

---

2. The record before us does not show that the order appealed from has been stayed. Apparently, the parties have agreed to a stay pending the outcome of this appeal.

concerning the town's standing to appeal, and for purposes of this appeal we shall assume but not decide that it has a sufficient interest in the subject matter to give it the requisite standing. *See Prince George's County v. Mayor & City Council*, 262 Md. 171 (1971).

Appellant argues here as it did below that under the LEOBR a law-enforcement officer is entitled to a hearing prior to punitive disciplinary action being taken against him only when the officer has first been subjected to investigation or interrogation *by the law-enforcement agency of which the officer is a member.* From this premise, appellant claims that because Duckworth was not a member of the State Police Department that investigated the shooting incident or interrogated him, he was not entitled to a hearing before his dismissal. For the reasons hereafter stated we find no merit to the argument in the circumstances of this case. We shall therefore affirm Judge Thayer's order of June 12, 1980.

(1)

First of all, it is clear that when the chief of police, on October 31, 1979, invoked § 734A (2) of the LEOBR to suspend Duckworth, his (Duckworth's) right to a "prompt hearing" immediately and automatically arose. For emphasis, we repeat the wording of the section:

> "Emergency suspension may be imposed by the chief when it appears that the action is in the best interest of the public and the law-enforcement agency. *Any person so suspended shall be entitled to a prompt hearing.*" (1975, ch. 809) (Emphasis supplied.)

Nothing in § 734A (2) suggests that the "prompt hearing" to which a suspended officer is entitled under this section is conditioned upon a previous investigation or interrogation by any one. Appellant's argument to the contrary is devoid of merit with respect to this portion of Judge Thayer's order.

(2)

Quite apart from a suspended police officer's right to a "prompt hearing" on the issue of emergency suspension under § 734A (2), we think that the LEOBR read as a whole manifests a legislative intent that every law-enforcement officer covered by the Act is entitled to a hearing before dismissal for disciplinary reasons. We reach that conclusion in spite of the inartfulness and lack of precision with which the Act, in many respects, is drawn.

Section 728 provides that, "Whenever a law-enforcement officer is under investigation or subjected to interrogation by a law-enforcement agency, for any reason which could lead to disciplinary action, demotion or dismissal, the investigation or interrogation shall be conducted under the following conditions". There then follow various regulations concerning the time, place and manner of the interrogation, and a provision that the law-enforcement officer "under investigation shall be informed in writing of the nature of the investigation prior to any interrogation," and that "upon completion of the investigation, the law-enforcement officer shall be notified of the name of any witness not less than ten days prior to any hearing [3]."

Section 730 (a) provides as follows:

> "*Notice; record.* — If the investigation or interrogation of a law-enforcement officer results in the recommendation of some action, such as demotion, dismissal, transfer, loss of pay, reassignment, or similar action which would be considered a punitive measure, then, except in the case of summary punishment or emergency suspension as allowed by § 734A of this subtitle and before taking that action, the law-enforcement agency shall give notice to the law-enforcement officer that he is

---

3. A "Hearing" is defined in § 727 (d) to mean:

" '*Hearing*' means any meeting in the course of an investigatory proceeding, other than in interrogation at which no testimony is taken under oath, conducted by a hearing board for the purpose of taking or adducing testimony or receiving other evidence."

entitled to a hearing on the issues by a hearing board. The notice shall state the time and place of the hearing and the issues involved. An official record, including testimony and exhibits, shall be kept of the hearing."

Read literally and by itself, this section could be interpreted to mean that *unless* there has been an "investigation or interrogation" of a law-enforcement officer *and unless* the investigator or interrogator recommends that some "punitive measure" be taken against the officer, he is not entitled to a hearing before being dismissed. This is the interpretation the appellant would have us place upon this section and the Act as a whole. Moreover, argues appellant, the investigation can only be performed by the *officer's* law-enforcement agency and not by some other agency of which the officer is not a member — such as, in this case, the State Police. Appellant therefore argues that because the Westernport Police Department conducted no investigation and no one in that department "recommended" the imposition of a disciplinary sanction against Duckworth, he was subject to dismissal without a hearing. We reject that argument.

"The cardinal rule of statutory construction is to ascertain and carry out the real legislative intent." "Absent a clear indication to the contrary, a statute, if reasonably possible, is to be read so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory." *Police Commissioner of Baltimore City v. Dowling*, 281 Md. 412, 418, 419, 379 A.2d 1007 (1977).

As originally enacted by Ch. 722 of the Acts of 1974, the LEOBR did not contain a § 735. That section (now codified as § 734A) was added by Ch. 809 of the Acts of 1975. The new section provides in its entirety as follows:

"The provisions of this subtitle are not intended to prohibit summary punishment or emergency suspension by higher ranking law-enforcement officers as may be designated by the head of a law-enforcement agency.

(1) Summary punishment may be imposed for minor violations of departmental rules and regulations when: (i) The facts which constitute the minor violation are not in dispute; (ii) the officer waives the hearing provided by this subtitle; and (iii) the officer accepts the punishment imposed by the highest ranking officer of the unit to which the officer is attached.

(2) Emergency suspension may be imposed by the chief when it appears that the action is in the best interest of the public and the law-enforcement agency. Any person so suspended shall be entitled to a prompt hearing. (1975, ch. 809, § 2.)"

By the same 1975 enactment the phrase, "except in the case of summary punishment or emergency suspension as allowed by section 735 [now § 734A] of this subtitle and, "was inserted into § 730 (a) as originally enacted. The title of the new legislative enactment (introduced as House Bill 1515) describes the amendments as "providing that *certain* punitive action may be taken without an investigation or formal hearing." (Emphasis supplied). When the amendments, together with the title, are read into the LEOBR as a whole ("when two statutes deal with the same subject matter as here, they must be read together if they are not inconsistent with one another" and "to the extent possible, full effect should be given to each." *Police Comm'r v. Dowling, supra,* at 418) we think the legislative intent is clear that 1) even summary punishment [4] may be imposed only if the "officer waives [5] the hearing provided"

---

4. Section 727 (e), as enacted by the 1975 amendment, defines "Summary Punishment" to mean:

"punishment imposed by the highest ranking officer of a unit or member acting in that capacity, which may be imposed when the facts constituting the offense are not in dispute. Summary punishment may not exceed three days suspension without pay or a fine of $150."

5. No issue of waiver is raised by the appellant.

elsewhere in the LEOBR, *i.e.*, in § 730; 2) even after an emergency suspension the suspended officer is entitled to a hearing on the issue of suspension; and 3) that in all other cases where any disciplinary sanction is contemplated, a hearing is required before that action may be taken.

Under the construction of the LEOBR that we adopt, § 730's provisions (that "if the investigation or interrogation results in the recommendation of some ... punitive measure ... then ... before taking that action, the law-enforcement agency shall give notice to the law-enforcement officer that he is entitled to a hearing") should not be read as establishing exclusive *sine qua non* conditions to the right to a hearing before disciplinary sanctions are imposed. As said by the Court of Appeals in *DiGrazia v. County Executive for Montgomery County,* 288 Md. 437, 453-454, 418 A.2d 1191 (1980):

> "The legislative scheme of the LEOBR is simply this: Any law-enforcement officer covered by the Act is entitled to its protections during any inquiry into his conduct which could lead to the imposition of a disciplinary sanction. Implicit in Section 728's provision that 'whenever a law-enforcement officer is under investigation ... by a law-enforcement agency, for any reason which could lead to disciplinary action, demotion or dismissal' is the assumption that a disciplinary-type complaint has been lodged against the officer — a complaint which, except as otherwise provided in the Act, will be investigated by the officer's law-enforcement agency as a precondition to any recommendation for the imposition of a disciplinary sanction."

In short, while it may be assumed as a precondition to a recommendation that there has been a previous investigation into a law-enforcement officer's conduct, it does not follow that where there has been no investigation by the officer's law-enforcement agency and no recommendation by the

investigators he may be dismissed without a hearing as a disciplinary sanction.[6]

*Order affirmed; costs to be paid by appellant.*

---

**6.** *Compare* Allgood v. Somerville, 43 Md. App. 187 (1979), a case decided on demurrer, where it did not appear that the appellant, a deputy sheriff, had been dismissed for disciplinary reasons. Under those circumstances we held that the procedural safeguards of the LEOBR were not available to her.