RICHARD P. NICHOLS v. BALTIMORE
POLICE DEPARTMENT

[No. 666, September Term, 1982.]

*Decided February 3, 1983.*

The cause was argued before GILBERT, C.J., and LISS and
BISHOP, JJ.

*Jana R. Barnett,* with whom were *Henry L. Belsky* and
*Steinberg, Schlachman, Potler, Belsky & Weiner, P.A.* on the
brief, for appellant.

*Millard S. Rubenstein, Assistant City Solicitor,* with whom was *Benjamin L. Brown, City Solicitor for Baltimore City,* on the brief, for appellee.

GILBERT, C.J., delivered the opinion of the Court.

This appeal is concerned with an interpretation of subsection 728 (b)(10) of the Law Enforcement Officers' Bill of Rights (LEOBOR), Md. Ann. Code art. 27, §§ 727-734A.

Subsection 728(b)(10) provides in pertinent part:

> "At the request of any law-enforcement officer under interrogation, he shall have the right to be represented by counsel or any other responsible representative of his choice who shall be present at all times during the interrogation, unless waived by the law-enforcement officer."

## —THE FACTS—

Richard P. Nichols, an eight-year veteran of the Baltimore City Police Department (Department) was notified on January 16, 1982, that a complaint had been filed with the Internal Investigation Division (IID) of the Department. The complaint was to the effect that Nichols had "while inside" the Chevrolet Inn, "observed an apparent drug transaction and shirked ... [his] responsibilities." [1]

The IID requested Nichols to submit to interrogation. Nichols invoked the LEOBOR with respect to counsel. When Nichols and his attorney appeared at the place designated for the interrogation, they were advised that the lawyer was there "only as an observer." Nichols would not be allowed to consult with his attorney once the questioning began. Nichols was also informed that he had the choice of answering the question put to him, or refusing to answer it and facing disciplinary action for insubordination.

---

1. There is nothing more in the record with respect to the alleged offense. Inasmuch as procedural obstacles were then interjected into the case, no further reference to the facts of the alleged incident were made.

By agreement, the scheduled interrogation was suspended in order that Nichols could mount a judicial challenge to the Department's policy.

The Baltimore City Court modified the Department's policy, observing:

"[T]he Legislature did not intend to restrict the role of the representative to that of a mere observer but, rather, intended that the representative be permitted to enter appropriate objections on the officer's behalf and to consult with the officer to the extent that is necessary to enable the representative to make such an objection and to that extent only. For these reasons, the policies adopted by the Department are inconsistent with the 'Law-Enforcement Officers' Bill of Rights' and, insofar as they are inconsistent, are invalid."

The court then "enjoined [the Department] from preventing the representative of a law-enforcement officer under interrogation from entering objections on the officer's behalf and from consulting with the officer to the extent that is necessary to enable the representative to make such an objection and to that extent only."

The litigants disagreed as to the meaning of the court's ruling. Judge Kaplan, in an effort to explicate his memorandum opinion, wrote to the parties:

"I believe that my Opinion makes it quite clear that it will be only *very* rarely that a representative must consult with an officer under interrogation in order to enter an objection. Although it is difficult to conceive of a situation in which such consultation would be necessary in order for a representative to enter an objection to a question asked by the interrogator, I ruled that a blanket ruling prohibiting consultation under any and all circumstances is inappropriate and that these matters should be handled by the interrogator on a case-by-case basis.

The Baltimore Police Department need not countenance attempts to convert the extremely limited right to consultation contemplated by the Legislature into a general right to consultation; the appropriate time for such consultation is *before* the interrogation commences. Should an attempt be made by an officer or his representatives to abuse this extremely limited right of consultation, the interrogator may properly deny consultation if the nature of the objection is such that it can be lodged without consultation. The Department's refusal to countenance such behavior will not violate this Court's Order of April 23, 1982. Of course, any officer who believes that a dishonored request for consultation was *not* frivolous and *not* an attempt to circumvent the Order of this Court may note his objection on the record and request judicial relief at the appropriate time." (Emphasis in original.)

Unmollified by the hearing court's modification, Officer Nichols has appealed to this Court, where he challenges Judge Kaplan's interpretation of subsection 728 (b) (10).

## —*THE LAW*—

The purpose of the LEOBOR was to guarantee to those law-enforcement officers embraced therein procedural safeguards during investigation and hearing of matters concerned with disciplinary action against the officer. *Abbott v. Administrative Hearing Board,* 33 Md. App. 681, 366 A.2d 756 (1976). Those safeguards are the very heart of the LEOBOR. *DiGrazia v. County Executive for Montgomery County,* 288 Md. 437, 418 A.2d 1191 (1980), *reversing* 43 Md. App. 580, 406 A.2d 660 (1972).[2]

---

**2.** After the Court of Appeals opinion in *DiGrazia,* the General Assembly, by statute, changed the law so as to reach the same result that this Court did in its *DiGrazia* opinion. *See* Laws 1981, ch. 328.

The construction placed on subsection 728 (b) (10) by the Department would lead to both counsel's and the representative's being no more than a silent witness to the interrogation. Of course, if counsel is converted into a witness, he may have to withdraw as counsel. *See* Md. Rule 1230, *Code of Professional Responsibility,* DR 5-102(A).[3] That result, we think, was never intended by the Legislature and was probably not considered by the Department.

In enacting the LEOBOR, the Legislature vested in law-enforcement officers certain "rights" not available to the general public. Among those "rights" are:

1. The "right" to be informed *in writing* of the nature of the investigation *before* the interrogation begins. Art. 27, § 728(b)(5).

2. The "right," once interrogation has commenced, to "reasonable rest periods." Art. 27, § 728 (b) (6).

3. The "right" to have the length of the interrogation session limited to a "reasonable period" of time. *Id.*

4. The "right" to have all questions asked of the officer by one interrogating officer in any one session. In sum, there can be no "Jekyll & Hyde" operation, or of a "machine-gun" type inquiry, whereby questions are fired at the "suspect" in rapid succession by two or more interrogators. Art. 27, § 728 (b) (3).

5. The "right" to a complete written record of the interrogation. Art. 27, § 728 (b) (8).

6. The "right" to be informed prior to commencement of interrogation if it is likely the officer will be placed under arrest. Art. 27, § 728 (b) (9).

Those six "rights" apply to departmental investigations or interrogations of a law-enforcement officer, whether the focus is on a criminal or a non-criminal violation.

---

3. Obviously, the Code of Professional Responsibility does not apply to any "other responsible representative."

Subsection (b)(10) of section 728 is, however, concerned solely with investigations or interrogations involving possible violations of non-criminal departmental policies. Otherwise, the full panoply of *Miranda* would be applicable, and subsection 728 (b) (10) would be mere surplusage, since *Miranda* is founded on the supreme law of the land, the Constitution of the United States. Consequently, any attempt by State law to restrict *Miranda's* application would be futile. Patently, that position was recognized by the Legislature and underscored by it through the enactment of subsection 728 (b) (9), which provides:

> "If the law-enforcement officer under investigation is under arrest, or is likely to be placed under arrest as the result of the interrogations, he shall be completely informed of all of his rights prior to the commencement of the interrogation."

The result reached by Judge Kaplan in his order and explanation thereof is somewhat akin to the procedure utilized by counsel in the taking of depositions.[4] Generally, at a deposition, an objection to a question is noted in the record, but the deponent is then allowed to answer the interrogatory. On occasion, the objecting counsel will instruct his or her client not to answer the particular question. The matter may then be resolved upon certification of the issue to a court.[5]

One principal difference between the interrogation and a deposition is the omnipresence of the policeman's commanding officer, who, as we have said, wields the power to issue a direct order to answer a question or face the consequences. The commander may order the officer to answer the question, and if that order is refused, the officer in all likelihood faces a charge of disobeying the commander's direct order. Dismissal from the department is

---

4. *See* Md. Rules 401 through 405 and 407 through 415.

5. Md. Rule 422a.
The court has the authority to order the deponent to answer the question under power of contempt. Md. Rule 422b 4.

a possible, if not probable, product of the disobedience. In short, the officer, confronted by not answering a question or disobeying a direct order of his or her commander, is placed in the position of choosing between facing a tiger or facing a lion. Either choice might prove fatal to the officer's career in law-enforcement.

The officer who must elect between answering a question or disobeying his commander is in a difficult position, as we have seen, but he or she is not completely defenseless. The LEOBOR allows the officer to bring suit against the Department if the officer believes his or her rights have been abridged. § 728 (b) (11).

Notwithstanding the degree of difficulty which the officer faces when put to a Hobson's choice, the Legislature never intended to permit an officer, under investigation for such non-criminal matters to stifle the interrogation or investigation to the point where it is for all practical purposes nonexistent.

As we see it, § 728 (b) (10) means no more than Judge Kaplan has said it means. Counsel or "other representative" may interpose objection to questions put to the officer by the interrogator and, further, may consult with the officer only to the extent necessary to make a particular objection. All other consultation, if any, should occur prior to the interrogation. In that respect, the interrogation differs naught from the taking of a deposition in a civil case.[6]

Nichols declares his 14th Amendment Due Process rights have been violated because counsel or the representative can do no more than object. Although the appellant likens the IID to a grand jury, the analogy falls far short of the mark because the IID interrogation is, in appellant's case, strictly non-criminal.

So long as no criminal charge emanates from the interrogation, there is no violation of the officer's 14th

---

**6.** Whether the "other representative" would, under the circumstances, be unlawfully engaged in the practice of law, is not presently before us, and we do not decide it.

Amendment Due Process Right. *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). *See* also *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968) and *Uniformed Sanitation Men Association v. Commissioner of Sanitation,* 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968).

We think Judge Friendly's language in the *Sanitation* case on remand [7] aptly stated the law, and we adopt it as our own:

> "To require a public body to continue to keep an officer or employee who refuses to answer pertinent questions concerning his official conduct, although assured of protection against use of his answers, or their fruits in any criminal prosecution, would push the constitutional protections [of the Due Process Clause] beyond its language, its history or any conceivable purpose of the framers of the Bill of Rights."

Judge Kaplan's order goes as far as possible in protecting the officer while simultaneously avoiding the abortion of the interrogation and the mutilation, if not destruction, of the Legislative intent.

*Judgment affirmed.*
*Costs to be paid by appellant.*

---

**7.** 426 F.2d 619, 629 (2d Cir. 1970), *motion denied,* 403 U.S. 917, 91 S.Ct. 2223, 29 L.Ed.2d 693 (1971), *cert. denied,* 406 U.S. 961, 92 S.Ct. 2055, 32 L.Ed.2d 349 (1972).