CHIEF, BALTIMORE COUNTY POLICE
DEPARTMENT *v.* DONALD G.
MARCHSTEINER

[No. 1361, September Term, 1982.]

*Decided June 10, 1983.*

The cause was argued before WEANT, ADKINS and BLOOM, JJ.

*John A. Austin, Assistant County Attorney for Baltimore County,* with whom was *Leonard S. Jacobson, County Attorney for Baltimore County,* on the brief, for appellant.

Donald G. Marchsteiner, in proper person, appellee.

ADKINS, J., delivered the opinion of the Court.

There are two issues in this case:

1. Whether appellee, police officer Donald G. Marchsteiner, is barred from seeking judicial enforcement of the Law Enforcement Officer's Bill of Rights (LEOBR), Code, Art. 27, §§ 727 *et seq.,* by virtue of his failure to resort to grievance procedures provided by a collective bargaining agreement between the Baltimore County Administration and the Fraternal Order of Police, Lodge No. 4.

2. If the first issue is answered in the negative, whether Marchsteiner's involuntary transfer from the Youth Services Division of the Baltimore County Police Department to uniformed patrol was punitive in nature and in violation of LEOBR.

## Facts

Marchsteiner has been a sworn officer in the Baltimore County Police Department since 1969. In 1976, he was assigned to the Department's Youth Services Division, a unit which, according to appellant, the Chief, Baltimore County Police Department, deals with "the crime prevention aspects of working with juveniles and youthful offenders." Initially, his job performance ratings were high, but in early 1981, they began to decline in all rating categories. His supervisor, Sgt. Horney, reported that "Det. Marchsteiner has not performed his duties to his full ability" and that "[i]t has been necessary for this rator *[sic]* to counsel Det. Marchsteiner due to his open lack of respect toward his supervisor." As of June 1, 1981, Marchsteiner was reassigned to the Police Athletic League within the Youth Services Division, Sgt. Horney expressing the hope "that the change of assignment will result in a change of attitude and improved performance." At about the same time, as a result of a complaint from a community service worker, Sgts. Henninger and Horney also counselled Marchsteiner against the use of foul language in front of any young people.

Despite all this counselling, it seems that Marchsteiner's performance ratings continued to decline in May and

August. Sgt. Henninger observed that the officer "lacked a positive attitude" and "lacked initiative". And in early September, Det. Chaney complained to a Lt. Penn that Marchsteiner had subjected juveniles in his charge to foul and abusive language.

Apparently, other complaints of similar conduct were received. On September 8, 1981, Lt. Zaworski reported to Lt. Penn. Zaworski had reviewed the complaints, the counselling sessions, and Marchsteiner's performance ratings. He wrote:

> It is obvious to the writer that Det. Marchsteiner has steadily shown an attitudinal problem especially in terms of dealing with the youngsters involved in the Youth Division's programs. He has been counselled by his immediate supervisor in the hopes [sic] that his attitude and reciprocal actions would change. He has also been moved into another unit within the Youth Division also in the hope of a positive change. Neither of these actions appear to have helped Det. Marchsteiner.

> A significant part of a youth officer's responsibility always involves dealing directly with juveniles in various programs. The philosophy of the Youth Division, as a Crime Prevention modality, is to build a positive image of the police officer in the eyes of young people. This, in turn is used as a catalyst to direct/redirect their activities into positive areas. Det. Marchsteiner's actions are the antithesis of this stated philosophy and are counterproductive of the goals of the Youth Division and the Crime Prevention Bureau.

> He has demonstrated his unsuitability and lack of impetus for positive change. It is my opinion that retaining him in the Youth Division would be detrimental to the good order and efficiency of same. Therefore it is my recommendation that Det. Marchsteiner be transferred to uniform patrol where he will not have the daily close contact with juveniles that he does now.

This recommendation was reviewed by Lt. Penn, who concluded that the record "clearly reflects a steady deterioration in attitude and job performance as well as an obvious unsuitability for dealing with juveniles." He endorsed the recommendation that Marchsteiner be involuntarily transferred "from Youth Services to the Patrol Bureau."

The involuntary transfer was effected as of September 17, 1981. Marchsteiner did not invoke the grievance procedure provided by a collective bargaining agreement between Baltimore County and the Fraternal Order of Police.[1] Instead, he sued the Chief, Baltimore County Police Department in the Circuit Court for Baltimore County pursuant to § 734 of the LEOBR.

Marchsteiner's complaint was that he had been subject to punitive measures without first being afforded the benefit of the procedures specified in §§ 730 and 731. These sections require, as a prerequisite to the imposition of a punitive measure against a law-enforcement officer (which Marchsteiner clearly was) certain notice, hearings and written decisions and recommendations. There is no doubt that LEOBR procedures were not followed prior to the implementation of Marchsteiner's involuntary transfer.

Appellant responded to Marchsteiner's petition by asserting that the involuntary transfer was not punitive in nature, and by claiming that Marchsteiner's access to the court was barred by his failure to use the established police grievance procedure. On cross-motions for summary judgment, the trial court at least implicitly rejected appellant's grievance procedure argument. It found "as a matter of law that a transfer under these circumstances is a disciplinary sanction." On August 12, 1982, it ordered appellant to "file appropriate departmental charges against Marchsteiner" and to schedule those charges "for a hearing in accordance with Article 27, section 730. . . ." This appeal followed.

---

1. During the hearing in the trial court, Marchsteiner was asked by the court why he had not pursued the grievance procedure. He responded that in a previous, unrelated incident, he had not been satisfied with the process, and felt that "I could not get a fair hearing on the grievance within the department."

## Grievance Procedure as Bar to Judicial Action Under LEOBR

Citing *Prince George's County v. Blumberg,* 288 Md. 275, 418 A.2d 1155 (1980), *cert. den.* 449 U.S. 1083 (1981), appellant argues that Marchsteiner's failure to exhaust his administrative remedy (the grievance procedure embodied in the collective bargaining agreement between Baltimore County and the FOP) bars his access to the court.[2] Appellant's reliance on *Blumberg* is misplaced.

In *Blumberg,* the Court of Appeals restated a rule as to which, it said, "there are few legal tenets which have received greater acceptance into the jurisprudential law of this State...." *Id.* at 283, 418 A.2d at 1160. It quoted *Agrarian, Inc. v. Zoning Inspector,* 262 Md. 329, 332, 277 A.2d 591, 592 (1971):

> [A] claimant ordinarily must seek to redress the wrong of which he complains by using the statutory procedure the legislature has prescribed for that kind of case, if it is adequate and available.... [I]f he is unsuccessful and wishes aid from the courts, he must take judicial appeals in the manner the legislature has specified rather than by seeking to invoke the ordinary jurisdiction of the courts.... [Consequently, we] have consistently held that where a special form of remedy is provided, the litigant must adopt that form and must not bypass the administrative body or official, by pursuing other remedies. *Id.*

There are at least two reasons why *Blumberg* does not apply here. To begin with, we do not have before us "a statutory procedure the legislature has established for [this] kind of case...." The grievance procedure that appellant seeks to equate with an "administrative body or official" is not pre-

---

2. Appellant also cites § 3-409 (b) of the Courts and Judicial Proceedings Article, but that provision obviously has no bearing on this case. It applies only to declaratory judgment actions, which this is not.

scribed by the Baltimore County Code, or by any other statute or ordinance. It is merely authorized by § 2-29 (a) of the Baltimore County Code which provides, in pertinent part: "The county and a certified employee organization *may* provide in a memorandum of understanding for a procedure for the resolution of grievances . . . [emphasis supplied]." This is a far cry from a legislatively-mandated procedure for administrative determination of specified matters.

We recognize, of course, that the existence of procedures other than administrative procedures may produce a result analogous to that produced by the application of the exhaustion of administrative remedies doctrine. The arbitration procedures established by the Health Care Malpractice Act provide an example.[3] *Oxtoby v. McGowan,* 294 Md. 83, 91, 447 A.2d 860, 864-65 (1982); *see also Cannon v. McKen,* 296, 27 Md. 459 A.2d 196 (1983). But the facts in *Oxtoby* and *Cannon,* like those in *Blumberg,* involved legislatively-mandated procedures which the legislature intended to operate as conditions precedent to access to the courts. As noted, we have no such legislatively-mandated conditions precedent here. In fact, as we shall now explain, the converse is true.[4]

The second reason that *Blumberg* does not govern this case arises from the first of five exceptions to the exhaustion of remedies doctrine stated in *Blumberg* itself. That first exception exists "[w]hen the legislative body has indicated that exhaustion of administrative remedies was not a precondition to the institution of normal judicial action." 288 Md. at 284, 418 A.2d at 1161.

The General Assembly enacted the LEOBR "to guarantee to those law-enforcement officers embraced therein proce-

---

**3.** Courts and Judicial Proceedings Art., §§ 3-2A-02 (a) and 3-2A-04 (a).

**4.** Because we are dealing here with a special legislatively-created remedy, cases holding that a grievance procedure in a collective bargaining agreement may, under some circumstance, bar a suit against an employer are not helpful to appellant. See, e.g. Meola v. Bethlehem Steel, 246 Md. 226, 228 A.2d 254 (1967); Jenkins v. Schluderberg-Kurdle Co., 217 Md. 556, 144 A.2d 88 (1958); Kelly v. Exxon Corp., 35 Md. App. 272, 370 A.2d 162 (1977), rev'd on other grounds, 281 Md. 689, 381 A.2d 1146 (1978).

dural safeguards during investigation and hearing of matters concerned with disciplinary action against the officer." *Nichols v. Baltimore Police Department,* 53 Md. App. 623, 455 A.2d 446, 448 (1983). It established new rights for law enforcement officers entitled to the benefits of its provisions, and it established in § 734 a judicial remedy for the enforcement of those rights:

> Any law enforcement officer who is denied any right afforded by this subtitle may apply at any time prior to the commencement of the hearing before the hearing board, either individually or through his certified or recognized employee organization, to the circuit court of the circuit . . . where he is regularly employed for any order directing the law enforcement agency to show cause why the right should not be afforded.[5]

It is significant that this language contains no hint of any necessity of exhausting administrative or grievance procedures as a precondition to access to the courts. We think it plain that the legislature intended no such precondition. Our conclusion is reinforced by § 734B, which, subject to an exception not pertinent here, provides that "the provisions of this subtitle [the LEOBR] shall supercede *[sic]* any State, county or municipal law, ordinance, or regulation that conflicts with the provisions of this subtitle, and any local legislation shall be preempted by the subject and material of this subtitle." *See Abbott v. Administrative Hearing Board,* 33 Md. App. 681, 366 A.2d 756 (1976).

To put it another way, and perhaps to provide a third reason for the non-applicability of the *Blumberg* principle, Marchsteiner was not attempting to invoke "the ordinary jurisdiction of the courts" or to institute "normal judicial action." Rather, he was asserting rights under a specific statutory provision providing for assertion of those rights.

---

5. The statute is quoted in the form it existed when Marchsteiner filed his action in the circuit court. It was repealed and reenacted with amendments not relevant to this case by Ch. 820, Acts of 1982, effective January 1, 1983.

We hold that a legislative purpose in enacting the LEOBR was to provide an exclusive and self-contained procedure in the circuit court for assertion of a denial of the administrative procedural rights embodied in it. Marchsteiner's access to the court was not barred by the existence of the grievance procedure which may have provided an alternative means of obtaining the protection sought.

### Marchsteiner's Involuntary Transfer as Punitive Action

As we have observed, the trial judge found "as a matter of law" that Marchsteiner's involuntary transfer was "a disciplinary sanction" or punitive measure that was unlawfully applied because it had not been preceded by the hearing and other procedures prescribed by the LEOBR. Section 730 (a) includes transfer as one of the actions which may be considered as "a punitive measure." But every transfer of a law-enforcement officer is not necessarily a punitive measure within contemplation of the LEOBR.

The LEOBR rights apply when a law-enforcement officer is under investigation by a law-enforcement agency as a result of a disciplinary-type complaint lodged against the officer. *DiGrazia v. County Executive of Montgomery County,* 288 Md. 437, 418 A.2d 1191 (1980); *see Town of Westernport v. Duckworth,* 49 Md. App. 236, 431 A.2d 709 (1981). In the case at bar, Marchsteiner was never charged with any violation of departmental regulations, ordinance or statute. There was no interrogation or investigation of any act alleged as a violation of any regulation, ordinance or statute. *Compare Allgood v. Somerville,* 43 Md. App. 187, 403 A.2d 837 (1979). We think it clear that the counselling sessions referred to earlier did not amount to either interrogation or investigation. The purpose of these sessions was not to ascertain facts upon which punitive sanctions might later be based, but rather to explain to Marchsteiner certain perceived shortcomings in his conduct, so that his future performance might be improved.

The circumstances here must be contrasted with those in *Duckworth, supra,* in which we held that the LEOBR had been violated. In that case, police officer Duckworth was involved in an accidental shooting of another municipal employee. He was suspended pending a State Police investigation. The investigation produced criminal charges against him. He was acquitted of those charges. Nevertheless, his employment was terminated. The termination was not preceded by the LEOBR procedural safeguard of a hearing. We held that the LEOBR mandated hearings for Duckworth, both as to his suspension and as to his discharge. In *Duckworth* the sanctions imposed — suspension and discharge — were obviously of a disciplinary nature. They were intended to punish Duckworth for a specific act of misconduct. Thus, the LEOBR applied.

It is true that in the present case the record discloses the existence of some complaints against Marchsteiner, arguably alleging misconduct. But the undisputed facts as recounted earlier show that the complaints themselves were not the basis for Marchsteiner's involuntary transfer. Performance and attitudinal problems, as reflected in performance ratings over a perod of more than six months and other observations of supervisors began the administrative chain of events which resulted in that action. The complaints were not the essential, motivating events. They were simply part of a factual pattern which was considered in its totality by police officials as part of their decision-making process.

It is probably not feasible to fashion a simple litmus test for determining whether any given personnel action of a law-enforcement agency falls within the punitive category. The law in this area must be developed on a case-by-case basis, with due regard to the particular facts of each situation. But on the facts of this case, it appears to us that the ultimate decision was not punitive in nature. It was an effort to place Marchsteiner where his abilities could be used for the benefit of the law enforcement agency, rather than to its detriment. As is apparent from the police documents quoted

at the outset of this opinion, the purpose of the transfer was to enhance departmental effectiveness, and to improve Marchsteiner's own performance, not to punish him. As in *Montgomery County Dept. of Police v. Lumpkin,* 51 Md. App. 557, 444 A.2d 469 (1982), which involved the involuntary transfer of eleven Montgomery County police officers to improve departmental efficiency, there was here a management decision determined "to be in the best interests of the law enforcement agency." Section 728 (c).[6]

In *Lumpkin,* the officers involved suffered some loss of pay, as did Marchsteiner. Moreover, it was contended that the basis on which individual officers were selected for transfer (lack of "productivity" in writing tickets) demonstrated a punitive intent as to them. Nevertheless, we held that the transfers were within the administrative or managerial authority of the law-enforcement agency, and not imposed as punishment for a specific act of misconduct.

As we did in *Lumpkin,* we "conclude that the transfer . . . [was] not punitive within the meaning of the LEOBR. . . ." 51 Md. App. at 569, 444 A.2d at 475. Therefore, the trial court erred in directing appellant to file charges against Marchsteiner and to hold a hearing on those charges.[7]

> *Judgment directing appellant to file charges against appellee and to hold hearing thereon reversed. Remainder of judgment affirmed. Costs to be paid one-half by appellant and one-half by appellee.*

---

**6.** Section 728 (c) reads: "This subtitle does not limit the authority of the chief to regulate the competent and efficient operation and management of a law-enforcement agency by any reasonable means including but not limited to, transfer and reassignment where that action is not punitive in nature and where the chief determines that action to be in the best interests of the internal management of the law-enforcement agency.

**7.** The trial court decided certain other issues presented to it in favor of appellant. There was no cross-appeal. We express no opinion on those issues, nor do we intend to affect the judgment as to them.