469 A.2d 1287

Paul C. LEIBE

v.

The POLICE DEPARTMENT OF the CITY OF ANNAPOLIS, et al.

No. 506, Sept. Term, 1983.

Court of Special Appeals of Maryland.

Jan. 13, 1984.

William W. Thompson, II, with whom were Paul & Thompson, P.C., Arlington, Va., E. James Thompson, Jr. and Albertini & Thompson, Baltimore, on brief, for appellant.

Frederick C. Sussman, City Atty., for City of Annapolis.

Argued before GILBERT, C.J., and LISS and ADKINS, JJ.

GILBERT, Chief Judge.

The question posed to us by this appeal is: Does a routine periodic performance evaluation constitute an "investigation" for the purpose of triggering the protections afforded

a police officer by the Law Enforcement Officer's Bill of Rights (LEOBR), Md.Ann.Code art. 27, § 727 *et seq.?* If affirmatively answered, we must then decide whether under the LEOBR a reduction in rank resulting from a recision of a promotion is distinguishable from a demotion. Because our answer to the former query is negative, we need not consider, in any depth, the latter.

## The Facts

Paul C. Leibe is a law enforcement officer. He joined the Annapolis City Police Department (APD) in July, 1974, and became a tenured employee eighteen months later. In June, 1981, Leibe was promoted to the rank of patrolman first class (Pfc), subject to a probationary period of twelve months. At the time of his promotion, the Chief of Police, John C. Schmitt, advised Leibe that the promotion was issuing because of a recent decrease in the amount of sick leave used by Leibe. Chief Schmitt also expressed the hope that Leibe's sick leave usage would not increase beyond the then current level.

About the time of Leibe's promotion, Sergeant Jay Craig of the Inspectional Services Division of the APD inquired into possible abuse of sick leave by Leibe. Following the check Craig notified Chief Schmitt that the suspicions concerning Leibe were unfounded.

On two occasions during the fall of 1981, Leibe was reprimanded by his shift commander, Lt. Cassin B. Gittings, for excessive use of sick leave and productivity problems. Sgt. Craig also, in the fall of 1981, looked into a "possible pattern of sick leave used by Officer Leibe and Tamara Miller [Leibe's girlfriend] . . . [a]nother employee. . . . They were off together occasionally on sick leave." The suspicions were communicated to Chief Schmitt.

A performance evaluation prepared on December 26, 1981, by Lt. Gittings rated Leibe "below average" for initiative, reliability and attitude, and "unsatisfactory" for sick leave. The remaining twenty categories were rated as "average" or

"above average," with an overall rating of "average." Lt. Gittings testified that he did not believe Leibe could be charged with a violation of APD regulations. He, however, told Chief Schmitt that "Officer Leibe would be receiving a poor evaluation and may be reviewed for demotion."

On January 20, 1982, Leibe was called into Chief Schmitt's office where he was informed that his promotion was being rescinded. Leibe was told that the primary basis for the reduction in rank was his excessive use of sick leave in the previous six months. A memorandum written by Chief Schmitt to Thomas Engelke, a personnel administrator, contained a careful accounting of the sick leave used by Leibe since 1980.

Leibe attempted to secure an appeal from Chief Schmitt's actions, but his efforts were frustrated by a portion of the Annapolis City Civil Service Code.[1] Thereafter, Leibe filed a suit in which he requested reinstatement to the promoted rank, back wages, removal of adverse material from his personnel files or, alternatively, the right to a hearing and other procedural safeguards provided for under the LEOBR.

The trial court found that:

"[T]he actions of the Defendants [APD] in demoting the Plaintiff [Leibe] were *supervisory and administrative, not investigatory and punitive, in nature.* The demotion was not punishment for any wrongdoing nor the result of a disciplinary type complaint and investigation. The demotion was an exercise of the Chief's power and responsibility to effectively and efficiently operate the law enforcement agency. . . . [T]he Plaintiff [Leibe] is not entitled to the protection of the LEOBR." (Emphasis supplied.)

---

1. The City would not permit the appeal because the Annapolis City Civil Service Code, § 7–17(c) does not permit an appeal by a permanent employee who is on probation in a position to which he has been promoted. It appears to us that § 7–17(c) is directed to employees of the fire department, but inasmuch as its application was not disputed in the trial court or here, we do not consider it.

I.

Leibe argues that the trial court erred in determining that he was not entitled to the protections of the LEOBR. He asserts that the demotion was a punitive action which resulted from an investigation. The applicable sections of the Md.Ann.Code art. 27, §§ 728, 730, state, in pertinent part:

"[§ 728.] (b) Whenever a law-enforcement officer is under investigation or subjected to interrogation by a law-enforcement agency, for any reason which could lead to disciplinary action, demotion or dismissal, the investigation or interrogation shall be conducted under the following conditions:

. . . .

(3) The law-enforcement officer under investigation shall be informed of the name, rank, and command of the officer in charge of the investigation, the interrogating officer, and all persons present during the interrogation. All questions directed to the officer under interrogation shall be asked by and through one interrogator during any one interrogating session consistent with the provisions of subsection (b)(6) of this section.

. . . .

(5) The law-enforcement officer under investigation shall be informed in writing of the nature of the investigation prior to any interrogation. Upon completion of the investigation, the law-enforcement officer shall be notified of the name of any witness not less than ten days prior to any hearing.

(c) This subtitle does not limit the authority of the chief to regulate the competent and efficient operation and management of a law-enforcement agency by any reasonable means including but not limited to transfer and reassignment where that action is not punitive in nature and where the chief determines that action to be in the best interests of the internal management of the law-enforcement agency."

"§ 730. (a) If the investigation or interrogation of a law-enforcement officer results in the recommendation of some action, such as demotion, dismissal, transfer, loss of pay, reassignment, or similar action which would be considered a punitive measure, then, except in the case of summary punishment or emergency suspension as allowed by § 734A of this subtitle and before taking that action, the law-enforcement agency shall give notice to the law-enforcement officer that he is entitled to a hearing on the issues by a hearing board. The notice shall state the time and place of the hearing and the issues involved. An official record, including testimony and exhibits, shall be kept of the hearing."

The APD contends that Leibe's reduction in rank was an exercise of Chief Schmitt's authority to "regulate the competent and efficient operation and management of [the] . . . law enforcement agency," and, therefore, is a type of action which is exempted under § 728(c) from the scope of the LEOBR. The APD further asserts that "the performance review process, which preceded the promotion recision, is a routine managerial procedure within the Police Department and is never undertaken with an eye or expectation of disciplinary or punitive action." We think the APD is partially correct in that the routine managerial procedure employed here is not an investigation, and, thus, it does not fall within the perimeters set by the LEOBR.

The Maryland courts have never squarely determined which actions by police departments constitute "investigations" under the LEOBR. This threshold consideration is somewhat illuminated by *DiGrazia v. County Executive for Montgomery County*, 288 Md. 437, 418 A.2d 1191 (1981), wherein the Court of Appeals stated:

"The legislative scheme of the LEOBR is simply this: Any law-enforcement officer covered by the Act is entitled to its protections during any inquiry into his conduct which could lead to the imposition of a disciplinary sanction. Implicit in § 728's provision that '[w]henever a law-enforcement officer is under investigation . . . by a law-en-

forcement agency, for any reason which could lead to disciplinary action, demotion or dismissal' is the assumption that a disciplinary-type complaint has been lodged against the officer—*a complaint which, except as otherwise provided in the Act, will be investigated by the officer's law-enforcement agency as a precondition to any recommendation for the imposition of a disciplinary sanction.* The procedural safeguards afforded to the officer during the official inquiry into his conduct constitute the heart of the Act's protections." (Footnote omitted.) (Emphasis supplied.) 288 Md. at 452, 453, 418 A.2d at 1200.

*See also Chief, Montgomery County Dept. of Police v. Jacocks,* 50 Md.App. 132, 135, 436 A.2d 930, 933 (1981). ("The law deals with situations in which some charge or complaint is made against a police officer, or he otherwise comes under suspicion of misbehavior . . . .")

■ In considering the ordinary and natural meaning of investigation, we find that *Webster's Dictionary* Third Ed. (1976) defines the word as "a detailed examination; a searching inquiry; to observe or study closely." While we will not here attempt to delineate precisely what actions will involve detailed examinations or searching inquiries, it is clear that the tracking of Leibe's use of sick leave was not an investigation.

■ The cases demonstrate that something more than counseling sessions, but perhaps less than formal complaints leading to inquiry, is necessary to trigger the LEOBR, *see Chief, Baltimore County Police Dept. v. Marchsteiner,* 55 Md.App. 108, 461 A.2d 28 (1983). Nevertheless, examination of sick leave records and even comparing them with another employee's is not an investigation as that word is normally and ordinarily used.

Inasmuch as the LEOBR has not been triggered insofar as Leibe is concerned, it is immaterial with respect to that act whether Leibe received a recision of promotion or a demotion.

## II.

Leibe next argues that the memo that was sent from Chief Schmitt to the personnel administrator was included in Leibe's file in contravention of the safeguards enumerated in the LEOBR. The specific section concerned is Md.Ann. Code art. 27, § 728, which states:

"(12) (i) A law enforcement agency may not insert any adverse material into any file of the officer, except the file of the internal investigation or the intelligence division, unless the officer has an opportunity to review, sign, receive a copy of, and comment in writing upon the adverse material, unless the officer waives these rights."

Because we have decided that Leibe was not, in this instance, entitled to the protections of the LEOBR, we will not consider the issue.

ORDER AFFIRMED.

COSTS TO BE PAID BY APPELLANT.