542 A.2d 1288

**Ralph J. CANCELOSE**

v.

**CITY OF GREENBELT, Maryland.**

**No. 266, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

July 7, 1988.

Leonard L. Lucchi (Wolman & Lucchi on the brief), Upper Marlboro, for appellant.

Jacqueline A. Brackett (William C. Brennan, Jr. and Knight, Manzi, Brennan, Ostrom & Ham, P.A. on the brief), Upper Marlboro, for appellee.

Argued Before GILBERT, C.J., and GARRITY and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

Ralph J. Cancelose, a City of Greenbelt police officer, filed a complaint against the City to show cause why he should not receive a hearing under the Law Enforcement Officers' Bill of Rights (LEOBR), Md.Code Ann. Art. 27, §§ 727–734D (1957, 1987 Repl.Vol.). This action followed notice to him by the City of his termination as a police officer. The trial judge of the Circuit Court for Prince

George's County dismissed Cancelose's complaint. He, in turn, has appealed, contending:

—He is entitled to a hearing under the LEOBR prior to termination by the City; and

—He is entitled to a hearing under the LEOBR prior to suspension by the City.

Cancelose was appointed a police officer for the City of Greenbelt in 1967. In August of 1987, Cancelose was placed on a monthly evaluation procedure for unsatisfactory work performance. Each month thereafter, he met with his supervising sergeant and his patrol division commander and received oral evaluations which were later reduced to writing. As a result of these oral and written work performance evaluations, the City's Chief of Police suspended Cancelose with pay in February, 1988. No hearing was held on this suspension. The Chief of Police then recommended to the City Manager that Cancelose be dismissed from the force, writing in part:

"Officer Cancelose has not achieved or maintained an acceptable level of competence in spite of instruction, encouragement, and direction of his supervisors. During the rating period, a slight improvement was made, however, the evaluations at the culmination were even less acceptable than the initial one that induced the program.

"Officer Cancelose has been given every opportunity to conform to performance standards expected of each member of department and has failed to do so. He shows no initiative whatsoever to complete the most routine and mundane tasks of a patrol officer. His failure to do so after supervisory intervention is paramount to insubordination and neglect of duty. He is universally distrusted by the rank and file, and as such, is a profound determent [sic] to the moral [sic] and safety of fellow officers."

The Chief of Police then specified the various aspects of Cancelose's incompetence, which included, *inter alia,* refusing to improve his work, negligence in performing his

duties, and disrupting normal police operations.[1]

As a result of the recommendation, the City Manager determined that Cancelose's employment be terminated, effective March 26, 1988. As permitted by the City of Greenbelt Code, § 13–176, Cancelose requested a hearing before the Employee Relations Board of the City. A hearing was scheduled but postponed at Cancelose's request. It has not yet been rescheduled.[2]

Cancelose filed a "Complaint for Show Cause Order" in the Circuit Court for Prince George's County under § 734 of the LEOBR. The two-count complaint alleged that Cancelose had been denied his rights by the City under the LEOBR.

The court issued an order requiring the City to show cause why the rights under the LEOBR should not be afforded and set the matter in for hearing. The City moved to dismiss on the grounds of improper service and failure to state a claim upon which relief can be granted. The court denied the motion on the first ground but granted the motion as to the second ground, rendering the following oral opinion:

"THE COURT: This is an action by the plaintiff in this case to relief under the Law Enforcement Officers' Bill of Rights, which is Article 27, Section 727 of the Annotated Code of Maryland.

"I find the following facts: that this action was filed and seeks specific relief by the defendant in this case, the City of Greenbelt, Maryland. I further find that htere [sic] is pending at this time relief extended to the plaintiff in this case under the City Charter of the City of Greenbelt in regards to his termination.

---

1. Insubordination and detrimental conduct were also alleged, but the underlying factual pattern was that of incompetence.

2. Cancelose has not pursued this avenue of relief further. Whether he may still do so is not before us.

"After this suit was filed and at the hearing of this case a motion to dismiss was filed in this case, which I heard, and based on the facts and circumstances of this case and th[e] law, as I understand it to be, the motion to dismiss is granted. Dismiss the case."

We will affirm.

—Termination—

██ The LEOBR was enacted by the Legislature in 1974. 1974 Md.Laws, ch. 722. The purpose behind the LEOBR is to guarantee law enforcement officers certain procedural safeguards during any investigation and subsequent hearing which could lead to disciplinary action, demotion, or dismissal. *Abbott v. Administrative Hearing Board, Prince George's County,* 33 Md.App. 681, 682, 366 A.2d 756 (1976), *cert. denied,* 280 Md. 727 (1977). Since the nature of the duties of police officers is different from that of other public employees, the establishment of different procedures covering any potential disciplinary action is justified. *Abbott,* 33 Md.App. at 688, 366 A.2d 756. Thus, specific standards are set forth as to how a LEOBR investigation is to be conducted, including the place, time and method of any interrogation of the officer, and requires that the officer receive written notice of the nature of the investigation prior to any interrogation and that a written record be kept of the interrogation. § 728(b).

██ Under the LEOBR, "[i]f the *investigation or interrogation* of a law enforcement officer *results in the recommendation of some action,* such as demotion, dismissal, transfer, loss of pay, reassignment, or similar action which would be considered a punitive measure ... before taking that action, the law enforcement agency shall give notice to the law enforcement officer that he is entitled to a hearing on the issues by a hearing board." § 730(a) (emphasis added).

Appellant's position is that he is entitled to the hearing provided for pursuant to § 730(a) of the LEOBR, as his dismissal was a punitive measure. Appellant, however,

overlooks another prerequisite necessary to invoke the right to a hearing pursuant to § 730(a) of the LEOBR: appellant's dismissal must have resulted from an "investigation or interrogation." *Leibe v. Police Dep't of Annapolis,* 57 Md.App. 317, 322–23, 469 A.2d 1287 (1984); *Montgomery County Dep't of Police v. Lumpkin,* 51 Md.App. 557, 566, 444 A.2d 469, *cert. denied,* 294 Md. 142 (1982).

In *Leibe,* a case similar to the case *sub judice,* a law enforcement officer filed suit to secure his rights to a hearing and other procedural safeguards provided for under the LEOBR after his promotion had been rescinded. The officer's performance had previously been evaluated and he had received, *inter alia,* unsatisfactory ratings for sick leave and below average ratings for initiative, reliability and attitude. The Chief of Police informed the officer that his promotion had been rescinded based primarily upon his excessive use of sick leave during the previous six months. We affirmed the trial court's determination that the officer was not entitled to the protections of the LEOBR, stating "that the routine managerial procedure employed here is not an investigation, and, thus, it does not fall within the perimeters set by the LEOBR." *Leibe,* 57 Md.App. at 322, 469 A.2d 1287.

Chief Judge Gilbert, speaking for this Court, considered for the first time what actions by police agencies constituted "investigation" as a prerequisite to the LEOBR protections:

"In considering the ordinary and natural meaning of investigation, we find that *Webster's Dictionary* Third Ed. (1976) defines the word as 'a detailed examination; a searching inquiry; to observe or study closely.' While we will not here attempt to delineate precisely what actions will involve detailed examinations or searching inquiries, it is clear that the tracking of [the officer's] use of sick leave was not an investigation.

"The cases demonstrate that something more than counseling sessions, but perhaps less than formal complaints leading to inquiry, is necessary to trigger the

LEOBR, *see Chief, Baltimore County Police Dept. v. Marchsteiner,* 55 Md.App. 108, 461 A.2d 28 (1983). Nevertheless, examination of sick leave records and even comparing them with another employee's is not an investigation as that word is normally· and ordinarily used." *Leibe,* 57 Md.App. at 323, 469 A.2d 1287.

In the case *sub judice,* appellant's dismissal from appellee's police department occurred because he regularly received poor performance evaluations over a period of approximately seven months. Since appellant's work performance and conduct were considered unsatisfactory, an administrative decision to dismiss appellant was made at the recommendation of appellee's Chief of Police. At no time was any investigation or interrogation commenced against appellant. Instead, his general work performance was evaluated monthly, using departmental competency standards which are applied consistently to all police officers in evaluating overall job performance. We hold that these evaluations were not investigations as that word is normally and ordinarily used. Appellant's termination as a Greenbelt City Police Officer was based upon his unsatisfactory work performance. Hence, the LEOBR procedural safeguards are not applicable in the case *sub judice.*

—Suspension—

Section 734A(2) of the LEOBR applies to law enforcement officers who are suspended with pay. It requires that such a suspension may only be imposed when it appears to be in the best interests of the public and the law enforcement agency. The subsection also requires that an officer suspended with pay be afforded a prompt hearing.

In February, 1988, appellant was suspended with pay by appellee's Chief of Police. He remained in that status until March 26, 1988, when his employment was terminated. The suspension notice stated as follows:

"It has been determined by the City Manager, the City Solicitor and [the City's Chief of Police] that for the good of all parties concerned, you are suspended with pay until

further notice. Such suspension shall remain in effect until legal review is made pertaining to your unsatisfactory work performance. Upon completion of legal review, you will be advised of the course of action the City will be taking."

Appellant argues that the notice did not allege that the suspension was "in the best interest of the public and the law enforcement agency," nor was appellant afforded a prompt hearing on the suspension.

While the notice did not specify that the suspension was in the best interest of the public and law enforcement agency, the statement that the action was for the good of all parties concerned implicitly so provides. Furthermore, since appellant was ultimately terminated from his employment based upon unsatisfactory work performance, we hold that the failure to provide a prompt hearing on the issue of his suspension with pay is moot.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.