654 A.2d 905

Curtis CALHOUN, et al.

v.

COMMISSIONER, BALTIMORE CITY
POLICE DEPARTMENT, et al.

No. 716, Sept. Term, 1994.

Court of Special Appeals of Maryland.

March 1, 1995.

662

Michael Marshall (Schlachman, Belsky & Weiner, P.A., on the brief), Baltimore, for appellants.

Gary Charles May, Asst. City Solicitor (Neal M. Janey, City Solicitor, on the brief), Baltimore, for appellees.

Argued before ALPERT, HARRELL and HOLLANDER, JJ.

HARRELL, Judge.

Appellants, Curtis Calhoun, Robert Heath, David C. Jones, Jr., Rodney Price, Gerald Hensley, Brian Bacon, Lennell Robinson, Sean Grant, and Marlene Green, appeal from a judgment entered by the Circuit Court for Baltimore City (Gordy, J.) granting the motion for summary judgment of appellees, the Commissioner and the Baltimore City Police Department, thereby precluding the application of the due process protections of the Law Enforcement Officers' Bill of Rights (LEOBOR [1]) to the polygraph examinations [2] of appellants.

---

1.  We have selected LEOBOR as the acronym used for this statute in our text of this opinion because it sounds better when spoken. We are aware that certain prior opinions have used LEOBR, i.e., *DiGrazia v. County Executive,* 288 Md. 437, 452, 418 A.2d 1191 (1980). In this regard, we follow the path of the late Chief Judge Gilbert of this Court. *See Nichols v. Baltimore Police Dep't,* 53 Md.App. 623, 627, 455 A.2d 446, *cert. denied,* 296 Md. 111 (1983).

2.  A polygraph examination was recently defined in *Patrick v. State,* 329 Md. 24, 29 n. 2, 617 A.2d 215 (1992):

## *ISSUES*

We have re-phrased appellant's issues to facilitate our discussion as follows:

I. Was the use of routine polygraph examinations and accompanying interrogations to determine the trustworthiness of officers assigned to the drug enforcement units an investigation or interrogation so as to invoke the due process protections of the LEOBOR?

II. Were the reassignments of appellants from the drug enforcement units, based on the results of their polygraph examinations, punitive measures so as to invoke the due process protections of the LEOBOR?

## *FACTS*

Between March 1992 and December 1993, appellants were members of specialized drug enforcement units within the Baltimore City Police Department (Department). In 1993, appellants, along with approximately 150 officers also assigned to the drug enforcement units, were required to submit to a routine polygraph examination. These examinations were required, according to the affidavit of Deputy Police Commissioner Eugene Tanzymore, Jr., "as a way to avoid corruption allegations, detect dishonest police officers, deter dishonest behavior and to insure that those members remain honest and trustworthy."[3]

---

The polygraph, colloquially known as the "lie detector" test, is a device which purports to gauge a subject's truthfulness. A polygraph machine measures changes in an examinee's blood pressure, pulse, respiration, galvanic skin resistance, and/or muscular activity in response to an examiner's questions. Because its reliability has not been sufficiently established, courts have nearly universally held polygraph evidence to be generally inadmissible at trial.

**3.** Deputy Commissioner Tanzymore also explained that "[d]rug enforcement units have been, and will continue to be, the source of major

Each appellant underwent the polygraph examination and, in each case, the results were either inconclusive or indicated problems related to the officer's honesty, integrity, and trustworthiness. As a result of these examinations, each appellant was reassigned from the drug enforcement unit into other units within the Department. At no time were appellants afforded a hearing or an opportunity to contest their reassignment.

Immediately following the notice of transfer, Officers Heath, Jones, and Price voluntarily submitted to a urinalysis drug test. The results of those tests indicated no drug use. Officers Calhoun and Grant also offered to submit to a urinalysis drug test, but the Department denied their requests. Officers Hensley, Bacon, and Robinson sought, through Sergeant Michael Harding, to retake the polygraph examination. Their efforts were similarly unsuccessful.

On 10 November 1993, appellants filed a Complaint in the Circuit Court for Baltimore City alleging that appellees had violated their rights to an administrative hearing guaranteed under the LEOBOR, Md.Code Ann., Art. 27, §§ 727–734D (1992 Replacement Volume & Supp.1994).[4] Specifically, the Complaint alleged that the use of the polygraph examinations by appellees constituted an investigation and/or an interrogation under the LEOBOR and that an involuntary reassignment resulting from those examinations was a punitive measure. Therefore, argued appellants, they were entitled to a trial board hearing as provided for under section 730(a)[5] of the LEOBOR. The Request for Show Cause Order on that

---

corruption allegations involving the taking of drugs and money from drug dealers by police officers assigned to those units." Therefore, "[t]he Department has a legitimate interest in insuring that members assigned to specialized units, particularly units where an officer comes in contact with large sums of money, jewelry, drugs, and other valuables, are honest, have impeccable integrity and are trustworthy."

4. The original Complaint was filed by Curtis Calhoun, Robert Heath, David C. Jones, Jr., Rodney Price, Gerald Hensley, and Brian Bacon.

5. Section 730(a) provides:

issue was denied by the circuit court on 24 November 1993, and the case was ordered to proceed on summonses.

On 12 December 1993, appellants filed an Amended Complaint adding Lennell Robinson as a plaintiff. Appellees filed a motion to dismiss the Amended Complaint. Appellants then filed a Second Amended Complaint on 21 January 1994, adding Sean Grant and Marlene Green as plaintiffs. Appellees responded with a Motion to Dismiss the Second Amended Complaint, or in the Alternative, for Summary Judgment. On 14 March 1994, a hearing was held on the motions and the circuit court granted appellees' motion for summary judgment. The court explained: "It is the finding of this Court that there is no genuine dispute as to a material fact and that the giving of a polygraph examination under the circumstances in this case does not amount to interrogation or investigation." Appellants noted a timely appeal to this Court.

## STANDARD OF REVIEW

The standard of appellate review of a trial court's grant of a motion for summary judgment is whether the trial court was "legally correct." *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 591, 578 A.2d 1202 (1990). When making a determination on summary judgment, a trial court makes no findings of fact. *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608 (1985). Rather, the court decides whether a genuine issue of material fact exists to prevent the entry of summary judgment. *Beatty v. Trailmaster Prods., Inc.*, 330

---

(a) *Notice; record.*—If the investigation or interrogation of a law enforcement officer results in the recommendation of some action, such as demotion, dismissal, transfer, loss of pay, reassignment, or similar action which would be considered a punitive measure, then, except as provided under subsection (c) of this section and except in the case of summary punishment or emergency suspension as allowed in § 734A of this subtitle and before taking that action, the law enforcement agency shall give notice to the law enforcement officer that he is entitled to a hearing on the issues by a hearing board. The notice shall state the time and place of the hearing and the issues involved. An official record, including testimony and exhibits, shall be kept of the hearing.
Md.Code Ann., Art. 27, § 730(a).

Md. 726, 737, 625 A.2d 1005 (1993); *see also Bond v. NIBCO, Inc.,* 96 Md.App. 127, 135, 623 A.2d 731 (1993); Md.Rule 2–501(e). Under this standard, therefore, we review the trial court's ruling as a matter of law. *Beatty,* 330 Md. at 737, 625 A.2d 1005.

## DISCUSSION

The LEOBOR was enacted by the Legislature in 1974. 1974 Md.Laws ch. 722. Its primary purpose is to guarantee substantive and procedural protections to law enforcement officers during disciplinary investigations, interrogations, and hearings. *Abbott v. Administrative Hearing Bd.,* 33 Md.App. 681, 682, 366 A.2d 756, *cert. denied,* 280 Md. 727 (1977). "In enacting the LEOBOR, the Legislature vested in law-enforcement officers certain 'rights' not available to the general public." *Nichols v. Baltimore Police Dep't,* 53 Md. App. 623, 627, 455 A.2d 446, *cert. denied,* 296 Md. 111 (1983). This is because "the nature of the duties of police officers is different from that of other public employees." *Cancelose v. City of Greenbelt,* 75 Md.App. 662, 666, 542 A.2d 1288 (1988).

In order to invoke the right to a hearing pursuant to section 730(a) of the LEOBOR, "there must be a threshold investigation or interrogation of a law enforcement officer which results in the recommendation of some action ... which would be considered a punitive measure." *Montgomery Co. Dep't of Police v. Lumpkin,* 51 Md.App. 557, 566, 444 A.2d 469 (1982); *Cancelose,* 75 Md.App. at 667, 542 A.2d 1288. In the instant case, appellants contend that the polygraph examinations were investigations and/or interrogations as defined by the LEOBOR and its attendant case law, and that their subsequent reassignment was a punitive measure. Therefore, argue appellants, they should be afforded "a hearing on the issues by a hearing board" pursuant to section 730(a).

### I.

The ordinary and natural meaning of investigation has been defined as " 'a detailed examination; a searching inquiry; to observe or study closely.' " *Leibe v. Police Dep't of Annap-*

*olis,* 57 Md.App. 317, 323, 469 A.2d 1287 (1984) (quoting *Webster's Dictionary* (3d ed. 1976)). The cases demonstrate that something more than counseling sessions, but less than formal complaints leading to inquiry, is necessary to trigger the LEOBOR. *See, e.g., Cancelose,* 75 Md.App. at 668, 542 A.2d 1288 (monthly evaluations of officer's job performance was not investigation); *Windsor v. Bozman,* 68 Md.App. 223, 229–30, 511 A.2d 69 (discharge "without cause" not investigation), *cert. denied,* 308 Md. 237, 517 A.2d 1120 (1986); *Leibe,* 57 Md.App. at 323, 469 A.2d 1287 ("examination of sick leave records even comparing them with another employee's is not an investigation as that word is normally and ordinarily used"); *Chief, Baltimore County Police v. Marchsteiner,* 55 Md.App. 108, 116, 461 A.2d 28 (1983) (counselling sessions not investigation or interrogation).

Whether a polygraph examination administered by a police department to its officers is an investigation and/or an interrogation sufficient to trigger the protections of the LEOBOR was directly addressed in *Widomski v. Chief of Police,* 41 Md.App. 361, 397 A.2d 222, *cert. denied,* 284 Md. 750 (1979). In that case, the Internal Affairs Division of the Baltimore County Police Department was investigating improper and illegal conduct by police officers assigned to the Dundalk district. In connection with this investigation, then-Corporal Widomski, stationed in Dundalk at that time, was twice interviewed by Internal Affairs. There was testimony that Widomski was not a suspect at the time of the interviews.

Soon thereafter, Widomski was administered a polygraph examination by Lieutenant William Ferrell " 'to see if [Widomski] had any knowledge that had been undisclosed' with respect to the Dundalk investigation." *Id.* 41 Md.App. at 363, 397 A.2d 222. Ferrell explained that "he usually asked follow-up questions when the interviewee answered in a manner that 'would arouse . . . [Ferrell's] suspicions' as to the truthfulness of the answer," and that he followed the same procedure with Widomski. *Id.* The results of Widomski's polygraph examination indicated that he " 'wasn't being completely truthful to some of the questions.' " *Id.* at 364, 397 A.2d 222. Once

informed of the results, Widomski named " 'at various times different officers that he had observed doing different things.' " [6]  *Id.*

Immediately following the polygraph examination, Sergeant Philip Huber of Internal Affairs was told to "interview" [7] Widomski " 'in reference to certain revelations that were brought out in the polygraph examination.' " *Id.* at 365, 397 A.2d 222. Prior to this interview, Widomski was given a "Notification to Accused of a Complaint," an explanation of his rights under the LEOBOR, and *Miranda* [8] warnings.

At a hearing before the Baltimore County Police Department Disciplinary Board, Widomski was found guilty of lying, filing false reports, receiving stolen goods, and petty theft. Widomski was subsequently dismissed from the police force.

On appeal, Widomski did not argue that he was innocent of the charges against him, but rather that the police department's investigators failed to adhere to the procedural requirements of the LEOBOR. Specifically, Widomski claimed:

"The polygraph examination conducted by Lt. Ferrell should have been conducted in accordance with Art. 27, § 728 because (1) just prior to the test Widomski conceded that he had been untruthful in a past interview, and (2) the questions asked were of such a nature as to elicit responses which 'could lead to disciplinary action.' "

*Id.* 41 Md.App. at 369, 397 A.2d 222.

This Court, quoting section 728(b),[9] held that, "at the time Widomski was asked to submit to the polygraph examina-

**6.** This Court inferred that "doing different things" meant "things of an unlawful nature." *Widomski,* 41 Md.App. at 364, 397 A.2d 222.

**7.** This Court acknowledged that the Hearing Board as well as counsel for the Police Department realized that the "interview" by Sergeant Huber was an interrogation. *Widomski,* 41 Md.App. at 365 n. 5, 397 A.2d 222.

**8.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**9.** Section 728(b) provides, in pertinent part:

tion, he was neither *under investigation* nor was he *interrogated* for reasons which 'could [have led] to disciplinary action, demotion or dismissal.' " *Id.* This Court explained that, because the evidence indicated that Widomski was not a suspect at the time of the polygraph examination, he was only a witness, "there was no necessity to conduct the polygraph examination in accordance with [the LEOBOR]." *Id.* at 370, 397 A.2d 222.

The polygraph examination in the case *sub judice* is less investigative in nature than that in *Widomski*. The polygraph examination administered to appellants was an annual routine test designed to regulate the competent and efficient operation and management of the drug enforcement units.[10] Deputy Commissioner Tanzymore stated that the purpose of the examination was not to investigate specific allegations of wrongdoing, but rather to "avoid corruption allegations, detect dishonest police officers, deter dishonest behavior and to insure that those members remain honest and trustworthy." In *Widomski*, on the other hand, the inquiry was conducted by the Internal Affairs Division, the internal investigatory arm of the police department. Moreover, Widomski's polygraph ex-

---

Whenever a law enforcement officer is under investigation or subjected to interrogation by a law enforcement agency, for any reason which could lead to disciplinary action, demotion or dismissal, the investigation or interrogation shall be conducted [in accordance with various procedures set forth in this statute].

Md.Code Ann., Art. 27, § 728(b). Although § 728(b) addresses an investigation or an interrogation "which could lead to disciplinary action, demotion or dismissal," and § 730(a) addresses an investigation or an interrogation that "results in the recommendation of some action such as demotion, dismissal, transfer, loss of pay, reassignment, or similar action which would be considered a punitive measure," we discern no meaningful difference between the investigation or the interrogation described in these two sections; nor have the cases decided by this Court. *See, e.g., Cancelose,* 75 Md.App. at 666–67, 542 A.2d 1288; *Marchsteiner,* 55 Md.App. at 116–17, 461 A.2d 28; *Town of Westernport v. Duckworth,* 49 Md.App. 236, 244–45, 431 A.2d 709 (1981).

**10.** Indeed, Deputy Commissioner Tanzymore explained that it was given to approximately 150 officers in 1993.

amination was administered during the course of an internal investigation of specific misconduct within the department. Notwithstanding these facts, this Court held that no investigation and/or interrogation occurred. *Widomski,* 41 Md.App. at 369–70, 397 A.2d 222.

We analogize the facts and circumstances of the instant case to those in *Cancelose v. City of Greenbelt,* 75 Md.App. 662, 542 A.2d 1288 (1988). In that case, police officer Cancelose was placed on monthly evaluation procedure for unsatisfactory work performance. Each month thereafter, he received oral and written evaluations from his supervising sergeant and his patrol division commander. As a result of those oral and written evaluations, Cancelose was suspended with pay. No hearing was held on the suspension, and Cancelose was subsequently terminated.

Soon thereafter, Cancelose obtained a show cause order in the circuit court, by alleging that he was denied certain due process protections under LEOBOR, including a hearing pursuant to section 730(a). The underlying complaint was dismissed by the circuit court.

On appeal, this Court held:

> In the case *sub judice,* appellant's dismissal from appellee's police department occurred because he regularly received poor performance evaluations over a period of approximately seven months. Since appellant's work performance and conduct were considered unsatisfactory, an administrative decision to dismiss appellant was made at the recommendation of appellee's Chief of Police. At no time was any investigation or interrogation commenced against appellant. Instead, his general work performance was evaluated monthly, using departmental competency standards which are applied consistently to all police officers in evaluating overall job performance. We hold that these evaluations were not investigations as that word is normally and ordinarily used. Appellant's termination as a Greenbelt

City Police Officer was based upon his unsatisfactory work performance. Hence, the LEOBR procedural safeguards are not applicable in the case *sub judice*.

*Id.* at 668, 542 A.2d 1288.

It is apparent from *Widomski* and *Cancelose* that the LEOBOR is intended to provide a police officer due process protection only when the officer is investigated and/or interrogated as a result of a disciplinary-type complaint lodged against the officer. As explained in *DiGrazia v. County Executive*, 288 Md. 437, 418 A.2d 1191 (1980):

> The legislative scheme of the LEOBR is simply this: Any law-enforcement officer covered by the Act is entitled to its protections during any inquiry into his conduct which could lead to the imposition of a disciplinary sanction. Implicit in § 728's provision that "[w]henever a law-enforcement officer is under investigation ... by a law-enforcement agency, for *any reason which could lead to disciplinary action, demotion or dismissal*" is the assumption that a disciplinary-type complaint has been lodged against the officer—a complaint which, except as otherwise provided in the Act, will be investigated by the officer's law-enforcement agency as a precondition to any recommendation for the imposition of a disciplinary sanction.

*Id.* at 452–53, 418 A.2d 1191 (footnote omitted). For example, in *Town of Westernport v. Duckworth*, 49 Md.App. 236, 431 A.2d 709 (1981), police officer Duckworth was involved in an accidental shooting of the town's Communications Officer. Duckworth was suspended without pay pending an investigation by the State Police. As a result of that investigation, criminal charges were brought against Duckworth. Although he was acquitted at the criminal trial, Duckworth was terminated by the police department. This Court, quoting *DiGrazia*, held that because the State Police conducted an investigation of Duckworth's involvement in the shooting, he was

investigated for purposes of section 730(a) of the LEOBOR.[11] *Id.* 49 Md.App. at 245, 431 A.2d 709.

The annual administration of polygraph examinations in the instant case was not the result of a disciplinary-type complaint lodged against appellants as in *Duckworth.* Instead, it was, as in *Cancelose,* a means to evaluate the competency of the officers assigned to the drug enforcement units, using established departmental procedures that are applied consistently to all officers in those units. In light of *Widomski* and the cases discussed *supra,* we hold that the polygraph examinations in the case *sub judice* were not investigations or interrogations sufficient to trigger the protections of the LEOBOR.

## II.

Appellants also contend that their reassignment to various other units within the Department was a punitive measure requiring a hearing under section 730(a) of the LEOBOR. As we have already decided that there was no investigation and/or interrogation of appellants, we need not address this issue. *See Cancelose,* 75 Md.App. at 666–67, 542 A.2d 1288. We will discuss this issue, however, to provide guidance to bench and bar.

Once it is established that a police officer has been subjected to an investigation and/or interrogation, the officer must prove that the action resulting from that investigation and/or interrogation was a punitive measure, if he or she is to be afforded a hearing under section 730(a) of the LEOBOR. *See id.; Lumpkin,* 51 Md.App. at 566, 444 A.2d 469; Md.Code Ann., Art. 27, § 730(a). A partial list of such punitive measures is included in the text of the statute: "demotion, dismissal, transfer, loss of pay, reassignment, or similar action." This Court, however, has held that not every action listed in section 730(a) is a punitive measure within the contemplation

---

11. This Court also held that the investigation need not be conducted by the officer's own police department to implicate the LEOBOR protections. *Duckworth,* 49 Md.App. at 245–46, 431 A.2d 709.

of the LEOBOR. *Marchsteiner*, 55 Md.App. at 116, 461 A.2d 28. Indeed, "[i]t is probably not feasible to fashion a simple litmus test for determining whether any given personnel action of a law-enforcement agency falls within the punitive category. The law in this area must be developed on a case-by-case basis, with due regard to the particular facts of each situation." *Id.* at 117, 461 A.2d 28.

In *Chief, Baltimore County Police Dep't v. Marchsteiner*, 55 Md.App. 108, 461 A.2d 28 (1983), police officer Marchsteiner was involuntarily transferred from the Youth Services Division (YSD) to the Patrol Bureau because of a "steady deterioration in attitude and job performance as well as an obvious unsuitability for dealing with juveniles." *Id.* at 112, 461 A.2d 28. Marchsteiner sought judicial review in the circuit court of his involuntary transfer, arguing that he had been subjected to punitive measures without first being afforded the benefit of a hearing under section 730(a) of the LEOBOR. The circuit court, finding Marchsteiner's transfer to be a "disciplinary sanction" or a punitive measure, ordered the police department to file charges against Marchsteiner and conduct an administrative hearing thereon prior to implementation of any transfer. The police department appealed, arguing that Marchsteiner's transfer was not punitive and therefore did not trigger the protections of the LEOBOR.

This Court explained that although "[s]ection 730(a) includes transfer as one of the actions which may be considered as 'a punitive measure[,]' ... every transfer of a law-enforcement officer is not necessarily a punitive measure within the contemplation of the LEOBOR." *Id.* at 116, 461 A.2d 28. Therefore,

on the facts of this case, it appears to us that the ultimate decision was not punitive in nature. It was an effort to place Marchsteiner where his abilities could be used for the benefit of the law enforcement agency, rather than to its detriment. As is apparent from the police documents quoted at the outset of this opinion, the purpose of the transfer

was to enhance departmental effectiveness, and to improve Marchsteiner's own performance, not to punish him.

*Id.* at 117–18, 461 A.2d 28.

Similarly, in *Montgomery County Dep't of Police v. Lumpkin,* 51 Md.App. 557, 444 A.2d 469, *cert. denied,* 294 Md. 142 (1982), Lumpkin and ten other police officers were reassigned from motorcycle duty and suffered loss of pay differential for hazardous duty after the police department decided to increase the efficiency of the traffic squads by decreasing the number of officers assigned thereto. One of the factors used in determining the officers to be reassigned was productivity.

The officers sought a hearing pursuant to section 730(a) of the LEOBOR. From the denial of their request, the officers filed a petition in circuit court requesting the court to order the police department to hold hearings under LEOBOR to determine whether "reassignment and loss of pay is appropriate in each of the petitioner's cases." *Id.* 51 Md.App. at 562, 444 A.2d 469. The trial judge decided that the reassignment of the officers based on their productivity was punitive in nature and that a hearing under section 730(a) was required.

On appeal, this Court held that "the transfers were not punitive within the meaning of the LEOBR subsection." *Id.* at 569, 444 A.2d 469. Instead, this Court concluded that the decision to reduce the size of a particular specialized enforcement unit was a management decision. *Id.* at 567–68, 444 A.2d 469. Therefore, "[t]he subsequent determination of the specific officers involved in the reduction and transfer was within the powers and authority granted the chief of police under § 728(c)[12] of Article 27." *Id.* at 568, 444 A.2d 469.

---

**12.** Section 728(c) provides:

This subtitle does not limit the authority of the chief to regulate the competent and efficient operation and management of a law enforcement agency by any reasonable means including but not limited to, transfer and reassignment where that action is not punitive in nature and where the chief determines that action to be in the best interests of the internal management of the law enforcement agency.
Md.Code Ann., Art. 27, § 728(c).

■ In the case *sub judice*, it is clear from the record that appellants' reassignments were not punitive in nature. They received no loss in pay or benefits; none was suspended; none was charged administratively, criminally, or civilly; none was reduced in rank; none was transferred to another district; none has been denied the opportunity to work overtime;[13] and none has had any adverse material placed in his or her personnel folder. As explained in Deputy Commissioner Tanzymore's affidavit, "The reassignments were consistent with the Department's obligation to insure that members assigned to these units possess superior honesty, integrity and trustworthiness."

Appellants, however, rely on the *Duckworth* decision in support of their contention that the reassignments were punitive measures. We believe the *Marchsteiner* Court's distinction of that case is equally applicable to the instant case. Therefore, we adopt it as stated:

---

**13.** Appellants contend in their Second Amended Complaint that "[t]he transfers have resulted . . . in some instances [in] a loss of the ability to work overtime." Deputy Commissioner Tanzymore's affidavit, however, stated that appellants were *not* denied the opportunity to work overtime. As appellants were the non-moving party in the summary judgment proceeding, it was their burden to identify "with particularity the material facts that are disputed," Md.Rule 2–501(b). Neither general allegations of facts in dispute nor a mere scintilla of evidence will suffice to support the non-movant's position, *Lynx, Inc. v. Ordnance Prods., Inc.*, 273 Md. 1, 7–8, 327 A.2d 502 (1974); *Seaboard Surety Co. v. Richard F. Kline, Inc.*, 91 Md.App. 236, 243–45, 603 A.2d 1357 (1992); there must be evidence upon which the jury could reasonably find for the non-moving party. *Beatty*, 330 Md. at 738, 625 A.2d 1005 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) ("mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact") (emphasis in original)). There is no evidence presented by appellants in the record extract before us to contravene Deputy Tanzymore's affidavit testimony. Indeed, at the summary judgment proceeding, counsel for appellants explained that "there is maybe a factual dispute as to whether they have less ability to work overtime, but that's almost a red herring. The bottom line is the LEOBR says you can't reassign or transfer. It does not attach a loss of wages or a loss of overtime to that provision."

The circumstances here must be contrasted with those in *Duckworth, supra,* in which we held that the LEOBR had been violated. In that case, police officer Duckworth was involved in an accidental shooting of another municipal employee. He was suspended pending a State Police investigation. The investigation produced criminal charges against him. He was acquitted of those charges. Nevertheless, his employment was terminated. The termination was not preceded by the LEOBR procedural safeguard of a hearing. We held that the LEOBR mandated hearings for Duckworth, both as to his suspension and as to his discharge. In *Duckworth* the sanctions imposed—suspension and discharge—were obviously of a disciplinary nature. They were intended to punish Duckworth for a specific act of misconduct. Thus, the LEOBR applied.

*Id.* 55 Md.App. at 117, 461 A.2d 28.

The reassignment of appellants was not intended to punish them for a specific act of misconduct. It was not punitive in nature. Instead, the reassignments were brought about by a concern for the reputation, integrity, and honesty of the drug enforcement units. Therefore, we hold the reassignment of appellants to be a management decision within the powers and authority granted the police commissioner under § 728(c) of Article 27.[14]

---

**14.** *But see Ocean City v. Johnson,* 57 Md.App. 502, 516, 470 A.2d 1308 (1984) (chief's inherent authority under § 728(c) must be exercised in conformance with LEOBOR). Appellees argue in their brief that the reassignment of appellants was within the discretion of the police commissioner pursuant to § 16-7 of the Code of Public Local Laws of Baltimore City, which vests in the commissioner the express authority to reassign members of the Department as he deems necessary to "best serve the interests of the public and the Department." As we have already held the reassignments to be a managerial decision and therefore not punitive so as to implicate the protections of the LEOBOR, we decline to address this argument. We note, however, that in *Baltimore City Police Dep't v. Andrew,* 318 Md. 3, 566 A.2d 755 (1989), the Court explained that the police commissioner cannot use his regulation-making authority under section 16-7 to strip away the LEOBOR protections. *Id.* at 12-13, 566 A.2d 755. Therefore, concluded the Court, the authority granted by section 16-7 must be exercised in accordance with the law. *Id.*

JUDGMENT AFFIRMED; COSTS TO BE PAID BY AP-PELLANTS.