Larry Welch, Director Kansas Bureau of Investigation 1620 S.W. Tyler Topeka, Kansas 66612
Dear Mr. Welch:
As Director of the Kansas Bureau of Investigation, you ask whether the Kansas Private Investigative or Security Operations Act (Act) requires persons who conduct polygraph examinations to be licensed as private detectives. Under the Act (with enumerated exemptions) it is unlawful for any person to engage in detective business unless licensed. K.S.A. 75-7b02; 75-7b03. Detective business is defined as:
 The furnishing of, making of or agreeing to make any investigation for the purpose of obtaining information with reference to:
 • Crimes or wrongs done or threatened against the United States or any state or territory of the United States;
 • the identity, habits, conduct, business, occupation, honesty, integrity, credibility, knowledge, trustworthiness, efficiency, loyalty, activity, movement, whereabouts, affiliations, associations, transactions, acts, reputation or character of any person;
 • the location, disposition or recovery of lost or stolen property;
 • the cause or responsibility for fires, libels, losses, accidents or damage or injury to persons or to property; or
 • securing evidence to be used before any court, board, officer or investigating committee. K.S.A. 75-7b01(a).
The determinative issue in relation to your question is whether a polygraph examination is an investigation or is a tool which may be utilized in an investigation. If the former, licensure as a private detective is required; if the latter, licensure is not required.
Perhaps the best place to begin our analysis is with a description of the polygraph examination:
 "[T]he modern polygraph machine is a sophisticated instrument capable of continuously and simultaneously measuring and recording various autonomic responses. It measures respiration at two points on the body; on the upper chest, the thoracic respiration, and on the abdomen, the abdominal respiration. Movements of the body associated with breathing are recorded such that the rate and depth of inspiration and expiration can be measured. The polygraph machine also measures skin conductance or galvanic skin response. Electrodes attached to the subject's fingertip or palm of the hand indicate changes in the sweat gland activity in those areas. In addition, the polygraph measures increases in blood pressure and changes in the heart rate. This measurement, known as the cardiovascular measurement, is obtained by placing a standard blood pressure cuff on the subject's upper arm. Finally, the polygraph may also measure, by means of a plethysmograph, blood supply changes in the skin which occur as blood vessels in the skin of the finger constrict due to stimulation.
. . . .
 "[T]he underlying scientific theory upon which the modern polygraph technique is based is derived from the notion that if a person is threatened or concerned about a stimulus or question, such as a question addressing the matter under investigation, such a question will express itself in terms of measurable physiological reactions which the subject is unable to inhibit and which can be recorded on a polygraph instrument. A skilled examiner can then review the charts and determine whether the subject is practicing deception or being truthful in answering the questions concerning the matter under investigation." U.S. v. Galbreth, 908 F. Supp. 877, 883-884 (D.N.M. 1995).
We note that in Kansas, absent consent of both parties, polygraph tests are still considered "too unreliable to be admissible and they tend to invade the province of the jury in determining the ultimate question of fact: whether a witness is speaking the truth." State v. Webber,260 Kan. 263, 276 (1996). Despite inadmissibility in court proceedings, a polygraph examination may nevertheless be "an instrument of utility and value" in the course of an investigation. State v. Blosser, 221 Kan. 59
(1976).
 "Its usefulness has been amply demonstrated by detective agencies, police departments and other law-enforcement agencies conducting criminal investigations. It is also being frequently employed in matters, other than investigation of crimes." 221 Kan. at 59.
One employment of polygraph examinations in a matter other than criminal investigations that has received court sanction is use in prison classification proceedings. Lavine v. Wright, 423 F. Supp. 357 (D.C. Utah 1976). Polygraph examinations have also been employed as a part of the application process for employment with a sheriff's department.Berniger v. Denver and Rio Grande Western Railroad Company, 139 F.R.D. 175
(D.Colo. 1991). [However, we hasten to add that the use of polygraph examinations in this arena is fraught with controversy. See
23 A.L.R. 4th 187, validity and construction of statute prohibiting employers from suggesting or requiring polygraph or similar tests as condition of employment or continued employment (1983).]
In the case most relevant to the issue at hand, Calhoun v.Commissioner, Baltimore City Police Department, 654 A.2d 905 (Md. 1995), police officer plaintiffs alleged that the police commissioner's use of routine polygraph examinations constituted an investigation which thus invoked due process protections under the Law Enforcement Officers' Bill of Rights. The court first determined that the ordinary and natural meaning of "investigation" was "a detailed examination; a searching inquiry; to observe or study closely." The court then contrasted this meaning with the purpose for the annual polygraph examination: "not to investigate specific allegations of wrongdoing, but rather to avoid corruption allegations, detect dishonest police officers, deter dishonest behavior and to insure that those members remain honest and trustworthy."654 A.2d at 911. Thus finding that the polygraph examinations were used as a means to evaluate the competency and trustworthiness of the officers assigned to the drug enforcement units, the court held that these routine polygraph examinations were not investigations sufficient to trigger otherwise applicable due process protections.
"Investigation" has also been defined as the "process of inquiring into or tracking down through inquiry; inquiry and examination with systematic attention to detail and relation." Mason v. Peaslee, 343 P.2d 805 (Ca. 1959).
Based on these considerations, in our opinion a polygraph examination is a tool which may be used in the course of an investigation, but does not by itself constitute an investigation. In this sense polygraph examinations are similar to interviews, photographs, blood tests or any number of other tools which may be used by private detectives in an investigation, as well as by a variety of other persons for other purposes. In relation to your question, the determinative factor is whether an investigation is being conducted, not what tools, techniques or devices are used in the course of the investigation. Thus we conclude that a person who furnishes, makes or agrees to make an investigation for any purpose referenced in K.S.A. 75-7b01(a) is required to be licensed as a private detective whether or not such person uses polygraph examinations. However, a person who merely conducts polygraph examinations and does not otherwise furnish, make or agree to make an investigation is not required to be licensed as a private detective.
To the extent that Attorney General Opinions No. 74-6, No. 79-40 and No. 87-161 are inconsistent with this opinion, they are withdrawn.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Camille Nohe Assistant Attorney General
CJS:JLM:CN:jm