**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARLIN LEE MILLS, Captain,
<u>Plaintiff-Appellant,</u>

v.

JOSEPH P. MEADOWS, individually
and in his official capacity as

No. 98-1704

Sheriff for Harford County;
HARFORD COUNTY, MARYLAND, a
Body Politic and Political
Subdivision of the State of
Maryland,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CA-97-3329-JFM)

Argued: June 10, 1999

Decided: July 22, 1999

Before MURNAGHAN, WILKINS, and HAMILTON,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Irwin Raphael Kramer, THE LAW OFFICES OF IRWIN
R. KRAMER, Owings Mills, Maryland, for Appellant. Philip Shams

Roberts, HARFORD COUNTY DEPARTMENT OF LAW, Bel Air, Maryland, for Appellees. **ON BRIEF:** Ernest A. Crofoot, County Attorney, Jefferson L. Blomquist, Deputy County Attorney, HARFORD COUNTY DEPARTMENT OF LAW, Bel Air, Maryland, for Appellee County; J. Joseph Curran, Jr., Attorney General, Stuart M. Nathan, Assistant Attorney General, MARYLAND DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES, Baltimore, Maryland, for Appellee Meadows.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Marlin Lee Mills appeals an order of the district court granting summary judgment to Joseph P. Meadows, Sheriff of Harford County, Maryland,**1** on Mills' claims that Meadows terminated him in violation of his constitutional rights to free speech and due process. Because we conclude that Meadows was entitled to terminate Mills on the basis of the latter's political affiliation and that Mills was not entitled to a pretermination hearing, we affirm.

I.

The facts, viewed in the light most favorable to Mills, are as follows. Mills began employment with the Harford County Sheriff's Office in 1971 as an entry-level deputy. Over the course of the next 20 years, he received several promotions. In January 1994, then-Sheriff Robert Comes promoted Mills to the position of captain. As

_____

**1** Mills also named Harford County as a defendant in this action. Because the County's liability, if any, is derived solely from Meadows' actions in his official capacity, we will refer to Appellees collectively as "Meadows" throughout this opinion.

2

a captain, Mills was equaled or exceeded in rank by only ten officers, including the sheriff, in a 230-person office.

In 1994, Sheriff Comes, a Democrat, ran for reelection against Meadows, a Republican. At the time of the campaign, Mills was the president of the Harford County Democratic Club. Additionally, he actively supported Comes' candidacy by hosting a fundraiser at his private swim and golf club and by posting a large campaign sign at the entrance to the club. These efforts were unavailing, however, and Meadows was elected sheriff in November 1994.

Shortly after his election, Meadows met individually with each member of the upper-level command staff. During his meeting with Mills on December 6, 1994, Meadows asked about Mills' relationship with Comes and indicated that he understood Mills to have been Comes' "right hand man." J.A. 105. Mills disputed this characterization of his position in the office and asserted that he was willing to serve Meadows as sheriff. Meadows stated that he did not know where Mills would fit into his organization, if anywhere, and that he would make a decision in the near future. Thereafter, Meadows conducted an informal investigation during which he was informed that no member of the upper-level command staff wanted to work with Mills and that many lower-level deputies had "expressed concerns about Mills' police and command acumen." J.A. 63. Approximately two weeks after their initial meeting, Meadows again met with Mills and informed him that he would be terminated if he did not resign. Later that day, Mills took early retirement effective January 1, 1995.**2**

Mills subsequently filed this action pursuant to 42 U.S.C.A. § 1983 (West Supp. 1999), alleging that Meadows terminated him based upon his political affiliation and campaign activities in violation of the First Amendment. Mills further claimed that Meadows violated

_____

**2** The employment action to which Mills was subjected has been characterized variously in the record as a termination, a failure to rehire, and a forced retirement. The nomenclature employed makes no difference for purposes of our analysis; the salient point is that Mills left his employment involuntarily. See Branti v. Finkel, 445 U.S. 507, 512 n.6 (1980). Throughout this opinion, we will refer to Mills as having been terminated.

3

the Fourteenth Amendment guarantee of procedural due process by firing him without providing a pretermination hearing. Additionally, Mills raised a claim of conspiracy under 42 U.S.C.A.§ 1985 (West 1994), asserted that his termination violated substantive due process, and stated several state-law claims. Prior to discovery, the district court granted summary judgment to Meadows on the federal claims, see Fed. R. Civ. P. 56, and declined to exercise jurisdiction over the state-law claims, see 28 U.S.C.A. § 1367(c)(3) (West 1993). On appeal, Mills challenges the grant of summary judgment on his First Amendment and procedural due process claims. We review the decision of the district court de novo. See Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988).

II.

Our analysis of Mills' First Amendment claim is controlled by our en banc decision in Jenkins v. Medford, 119 F.3d 1156 (4th Cir. 1997) (en banc), cert. denied, 118 S. Ct. 881 (1998). In Jenkins, we considered the claims of several deputy sheriffs who were fired by the newly elected sheriff of Buncombe County, North Carolina. The deputies, all of whom had supported the sheriff's political opponents during the campaign, alleged that they had been terminated in violation of their First Amendment rights. See id. at 1158-59. We held that the deputies' claims should be analyzed under the line of Supreme Court precedent established by Elrod v. Burns, 427 U.S. 347 (1976), and Branti v. Finkel, 445 U.S. 507 (1980). See Jenkins , 119 F.3d at 1160-61. Under Elrod and Branti, an employee may not be terminated solely on the basis of political affiliation, i.e., merely because he belongs to a different political party or faction than his employer, unless the employer "can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Branti, 445 U.S. at 518; see Elrod, 427 U.S. at 355-60, 367 (plurality opinion); id. at 375 (Stewart, J., concurring in the judgment).

In determining whether a sheriff in North Carolina could terminate deputy sheriffs based on political affiliation, we considered "the specific political and social roles of sheriffs and their deputies in North Carolina" and noted that sheriffs in that state are "important political figure[s]" who are responsible for implementing a political agenda

4

that has been approved by the voters through the sheriff's election. Jenkins, 119 F.3d at 1163. Moreover, we observed that in North Carolina, a deputy sheriff is the alter ego of the sheriff, who can be held liable for a deputy's misconduct. Based upon these considerations, we held that party affiliation was an appropriate requirement for the office of deputy sheriff in North Carolina; therefore, the sheriff did not violate the First Amendment rights of the deputies in terminating them. See id. at 1164.**3**

Jenkins is dispositive of Mills' claim that his dismissal violated his constitutional rights. In Maryland, as in North Carolina, a deputy sheriff is the alter ego of the sheriff. See Rucker v. Harford County, Md., 558 A.2d 399, 402, 406 (Md. 1989). Additionally, Mills was a high-ranking official--in a department of 230 people, he was one of only seven captains and was exceeded in rank by only four officers, including the sheriff himself. Furthermore, at the time of his discharge Mills was an at-will employee. Because Mills' position is essentially indistinguishable from the position occupied by the deputy sheriffs whose claims we considered in Jenkins, that case compels a conclusion that Meadows was entitled to terminate Mills on the basis of his political affiliation. Accordingly, we affirm the grant of summary judgment to Meadows on this claim.

III.

Mills next contends that the district court erred in rejecting his claim that he was deprived of procedural due process when Meadows terminated him without first providing a hearing. Mills bases this claim on a provision of the Maryland Law Enforcement Officers' Bill of Rights (LEOBR) which states that a law enforcement officer is entitled to a hearing if "investigation or interrogation of [the] law enforcement officer results in the recommendation of... dismissal." Md. Ann. Code art. 27, § 730(a) (Supp. 1998).

We affirm the grant of summary judgment to Meadows on this issue because Mills was not entitled to a pretermination hearing under

_____

**3** We limited our holding, however,"to those deputies actually sworn to engage in law enforcement activities on behalf of the sheriff." Id. at 1165.

5

the LEOBR. The procedural protections of the LEOBR apply "only when [an] officer is investigated and/or interrogated as a result of a disciplinary-type complaint lodged against the officer." Calhoun v. Commissioner, Baltimore City Police Dep't, 654 A.2d 905, 911 (Md. Ct. Spec. App. 1995). Here, no complaint was ever lodged against Mills.

IV.

For the reasons set forth above, we conclude that the district court correctly granted summary judgment to Meadows on Mills' First Amendment and procedural due process claims.**4** Accordingly, we affirm.

AFFIRMED

_____

**4** In view of our disposition of the merits of the appeal, we need not consider Harford County's claim that it is not a proper party to this action.